UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

_____

No. 91-4679

_____


MINDY MICHELLE BLACKWELL,

Plaintiff-Appellee,

versus

BENNY BARTON, sued individually
and in his official capacity,

Defendant-Appellant.

_____

Appeal from the United States District Court for the
Eastern District of Texas

_____

(September 23, 1994)


Before GARWOOD, DAVIS and SMITH, Circuit Judges.

GARWOOD, Circuit Judge:

Plaintiff-appellant Mindy Michelle Blackwell (Blackwell) sued defendant-appellant Benny Barton (Barton) asserting constitutional and state law violations arising from an allegedly illegal arrest and subsequent detention. Barton appeals the denial of his motion for summary judgment in which he claimed that he was shielded from personal liability on the constitutional claims by the defense of qualified immunity. We reverse the denial of his motion for summary judgment and remand for further proceedings in accordance with this opinion.

## Facts and Proceedings Below

On December 3, 1990, Barton, a peace officer investigating "hot checks" for the Nacogdoches County, Texas, District Attorney's Office, sought to arrest a Melinda K. Allen (Allen) on an outstanding warrant. Barton knew that Allen worked in health spas and went by the name "Mindy." He went to the Ultra Fit Health Club in Nacogdoches, Texas, where, unbeknownst to him, plaintiff Blackwell taught aerobics. Barton asked a receptionist if he could speak to "Mindy." The receptionist replied that "Mindy" was teaching a class but would be out soon. Barton waited.

After she finished working, Blackwell approached Barton and identified herself as "Mindy." According to Barton, her appearance was substantially similar to the physical description of Allen that he had received from his dispatcher.[1] Barton requested that she accompany him, which she did. Outside the spa, he informed her that she had $1,000 in outstanding checks. Blackwell protested. According to her, she told Barton, "I had not signed any hot checks." She gave him her driver's license, which he put in his pocket, apparently without looking at it. Barton asked her to follow him in her car to the county law enforcement center. She did so.

When Barton and Blackwell arrived at the law enforcement center, two jailers greeted them who knew Blackwell. The name

---

[1] According to Allen's driving record, she is a white female; born November 2, 1964; 5 feet 3 inches tall; weighing 115 pounds; with brown hair and brown eyes. Blackwell's driving record shows that she is a white female; born August 8, 1964; 5 feet 4 inches tall; weighing 125 pounds; with red hair and green eyes.

Melinda Allen was mentioned, and Blackwell then informed Barton that her name was not Melinda. When he had confirmed this information, he escorted Blackwell to her car. While Barton does not contend that he did not arrest or detain Blackwell, he asserts without contradiction that she was never handcuffed, finger-printed, photographed, booked, or placed in a holding cell. Barton estimated, and Blackwell does not dispute, that twenty-five minutes elapsed from the time he met Blackwell at the health spa to the time she was allowed to leave the police station; no more than ten minutes of that time was spent at the law enforcement center (Blackwell says she was there "a few minutes").

Blackwell sued Barton, pursuant to 42 U.S.C. § 1983, alleging that he unlawfully arrested and detained her in violation of the Fourth and Fourteenth Amendments. In addition, she asserted pendent state law claims for false imprisonment, intentional infliction of emotional distress, and negligent infliction of emotional distress.[2] Blackwell sought compensatory damages of $60,000, as well as punitive damages and attorneys' fees.

Barton filed a motion for summary judgment, supported by his affidavit describing the events in question, asserting that Blackwell had failed to state a claim upon which relief could be granted and that he was shielded from personal liability on the constitutional claims by the defense of qualified immunity. Blackwell filed a motion for partial summary judgment limited to the issue of Barton's liability for arresting her without probable

---

[2]    Blackwell's state law claims are not at issue in this appeal.

3

cause. Blackwell's motion was supported by her affidavit, which does not materially contradict Barton's, and an affidavit of an individual who said he knew both Blackwell and Allen and that they do not look alike, having different color hair and eyes and different skin tone and facial features. Analyzing the motions under Fourteenth Amendment due process cases, the district court denied both motions, concluding that the evidence created a question of fact for the jury. The court reasoned that a reasonable jury could find either that Barton acted in reckless disregard of the possibility that he was arresting the wrong person or that his conduct did not rise to the level of negligence necessary for personal liability. Finally, the court held that Blackwell failed to plead facts sufficient to support a section 1983 action against Barton in his official capacity and dismissed that portion of her complaint.

Barton timely appeals the denial of his motion for summary judgment. We have jurisdiction pursuant to 28 U.S.C. § 1291, as the district court's denial of Barton's motion for summary judgment based on qualified immunity, to the extent it turns on a question of law, is deemed a final judgment for purposes of appeal. *Mitchell v. Forsyth*, 105 S.Ct. 2806, 2817 (1985); *Reese v. Anderson*, 926 F.2d 494, 498 n.3 (5th Cir. 1991).

## Discussion

### I.   Standard of Review

We review the district court's denial of summary judgment for Barton *de novo*, applying the same standard as the district court. *Brewer v. Wilkinson*, 3 F.3d 816, 819 (5th Cir. 1993). Thus,

4

summary judgment for Barton is appropriate only if there is no genuine issue as to any material fact, and if Barton is entitled to judgment as a matter of law.  FED. R. CIV. P.56(c); *Brewer*, 3 F.3d at 819.  As Barton asserted his entitlement to qualified immunity in a properly supported motion for summary judgment, the burden was on Blackwell to come forward with summary judgment evidence sufficient to sustain a determination that Barton's actions violated clearly established federal law.  *Salas v. Carpenter*, 980 F.2d 299, 304, 306 (5th Cir. 1992).  We consider the evidence in the light most favorable to Blackwell, the nonmovant.

The first inquiry in the examination of a defendant's claim of qualified immunity is whether the plaintiff alleged the violation of a clearly established constitutional right.  *Siegert v. Gilley*, 111 S.Ct. 1789, 1793 (1991).  The second inquiry is to determine whether the defendant is entitled to qualified immunity.  State officials are entitled to qualified immunity unless they violate a constitutional right that was clearly established at the time of their conduct.  *Pfannstiel v. Marion*, 918 F.2d 1178, 1183 (5th Cir. 1990).

II.  Constitutional Violation

The standard in this Circuit for addressing section 1983 claims arising from allegedly unlawful arrests based on mistaken identity is not readily ascertainable from our prior decisions, for in similar contexts we have turned to both the Fourth and Fourteenth Amendments.  The Fourth Amendment establishes the right to be secure against unreasonable seizures and provides that no warrant shall issue but upon probable cause.  Blackwell asserts

violations of both Amendments in her complaint.

In addressing the propriety of Barton's actions, the district court relied on Fourteenth Amendment due process cases, discussing *Daniels v. Williams*, 106 S.Ct. 662 (1986), and *Herrera v. Millsap*, 862 F.2d 1157 (5th Cir. 1989). In *Daniels*, faced with a claim by an inmate in a city jail who slipped on a pillow negligently left on a stairway by a prison deputy, the Supreme Court concluded "that the Due Process Clause is simply not implicated by a *negligent* act of an official causing unintended loss of or injury to life, liberty, or property." 106 S.Ct. at 663 (original emphasis).

In *Herrera v. Millsap*, this Court applied the holding of *Daniels* to a case of mistaken arrest. 862 F.2d at 1160. A police officer investigating a theft was told that "Gerald Herrera" was the perpetrator of the crime. In police records and in the case submitted to a grand jury, however, the name of the perpetrator was mistakenly given as that of "Gerardo Herrera," the plaintiff. The grand jury indicted Gerardo Herrera, and an arrest warrant issued under that name. Gerardo Herrera was arrested pursuant to the warrant and incarcerated several days before the mistake was discovered. In considering Gerardo Herrera's claim for false arrest and incarceration, this Court concluded that the evidence showed, at most, negligence, and we affirmed summary judgment for the defendants. *Id*. The *Herrera* Court did not apply Fourth Amendment analysis; in that case, however, unlike the present appeal, the wrongdoing was not of the arresting officers but a result of misinformation given to the grand jury.

The Fourth Amendment controlled this Court's decision in *Brown*

*v. Byer*, 870 F.2d 975 (5th Cir. 1989), decided approximately three months after *Herrera*. In *Brown*, a deputy constable received arrest warrants for a "Tamie Brown." The officer decided to write upon the warrants the name of "Tammy Brown," the plaintiff. The officer deliberately altered the driver's license number, address, appearance, and date of birth to match information applicable to Tammy Brown. The altered warrants were then entered into the computer system in the area where the plaintiff lived, leading to her arrest several months later when she was stopped for a traffic offense. We determined that the jury was justified in finding the officer who had altered the warrant knew the plaintiff was not the person named in warrant and affirmed judgment for the plaintiff against that officer. 870 F.2d at 979.

On the basis of *Daniels* and *Herrera*, the district court determined that the evidence created a fact question for the jury: whether Barton's conduct constituted mere negligence or whether it amounted to reckless disregard for Blackwell's rights. The court mentioned *Brown* but chose instead to evaluate the evidence under the Fourteenth Amendment.

We hold that Blackwell's section 1983 claim against Barton for illegal arrest and detention is properly considered under the Fourth Amendment, the more specific constitutional right implicated by her allegations. In *Graham v. Connor*, 109 S.Ct. 1865 (1989), the Supreme Court held that all allegations of excessive force during an arrest, investigatory stop, or other seizure should be analyzed under the Fourth Amendment's "reasonableness" standard, rather than under a substantive due process approach:

> "Because the Fourth Amendment provides an explicit textual source of constitutional protection against this sort of physically intrusive governmental conduct, that Amendment, not the more generalized notion of `substantive due process,' must be the guide for analyzing these claims." 109 S.Ct. at 1871.

*See also Tennessee v. Garner*, 105 S.Ct. 1694 (1985) (analyzing claim of excessive force to effect arrest solely under Fourth Amendment notwithstanding complaint's allegations of violations of Fourth and Fourteenth Amendments); *Albright v. Oliver*, 114 S.Ct. 807, 811-813 (1994) (plurality opinion). Although the present case does not involve a claim of excessive force, the reasoning of *Graham* is equally applicable to Blackwell's claim for illegal arrest based on mistaken identity.

Thus, the district court erred in examining Barton's claim of qualified immunity under the Fourteenth Amendment and the negligence analysis of *Daniels* and *Herrera*. Nevertheless, Blackwell has asserted a clearly established constitutional right: to be free from unreasonable seizure, or not to be arrested absent probable cause. Our task must be to weigh Barton's qualified immunity defense in light of this Fourth Amendment right.

III. Qualified Immunity

Barton is entitled to qualified immunity unless he violated a constitutional right that was clearly established at the time of his conduct. *Pfannstiel*, 918 F.2d at 1183. "If reasonable public officials could differ on the lawfulness of the defendant's actions, the defendant is entitled to qualified immunity." *Id*. Therefore, even if Barton violated Blackwell's constitutional rights, he is entitled to qualified immunity if his conduct was

8

objectively reasonable. *Id*.

Blackwell has asserted that Barton violated her Fourth Amendment right to be free from an unreasonable seizure by arresting her without probable cause. The clearly established law at the time of Barton's conduct provided that an arrest, with or without a warrant, must be based on probable cause. *United States v. Raborn*, 872 F.2d 589, 593 (5th Cir. 1989). Probable cause exists when the facts available at the time of the arrest would support a reasonable person's belief that an offense has been, or is being, committed and that the individual arrested is the guilty party. *Id*. Although applying an objective standard, we may consider Barton's experience and expertise in evaluating the reasonableness of his conduct. *Id*.

The Fourth Amendment is not violated by an arrest based on probable cause, even if the wrong person is arrested, if the arresting officer had a reasonable, good faith belief that he was arresting the correct person. *Hill v. California*, 91 S.Ct. 1106 (1971). In *Hill*, police officers had probable cause to arrest Hill, but did not have an arrest or search warrant. The officers arrived at Hill's residence where they were confronted by a man who fit the description of Hill but who identified himself as Miller and produced identification in that name. The officers, believing that Miller was Hill, searched the residence; Hill was ultimately found guilty of robbery based on the fruits of that search. The Court upheld the search, concluding that the officers had probable cause to arrest Hill and a reasonable, good faith belief that Miller was Hill. Therefore the arrest of Miller was valid (even

9

though Miller was not Hill), and the search of the residence incident to that arrest, under then-current law, was proper. 91 S.Ct. at 1110-1111.

The Court has extended this reasonableness analysis to other elements of search and seizure law. *See, e.g., Illinois v. Rodriguez*, 110 S.Ct. 2793, 2800 (1990), in which the Court held that the Fourth Amendment is not violated when a warrantless entry is based on an officer's reasonable, though erroneous, belief that the person who has consented to the entry has authority to give that consent.

Unlike *Hill*, our case of *Brown v. Byer* involved an intentional and knowing alteration of an arrest warrant to match the information pertaining to the plaintiff. We expressly distinguished from that situation, however, circumstances in which an officer arrested another person by an honest mistake:

> "The existence of a facially valid warrant for the arrest of one person does not authorize a police officer to effect the arrest of another person, even if the officer believes the second person guilty of the first person's crimes and even if the two people have similar names. *The fact that officers may sometimes arrest the second person by an honest mistake does not constitute a legal excuse for the conduct of an officer who makes no such mistake.*" 870 F.2d at 979 (emphasis added).

*See Simons v. Clemons*, 752 F.2d 1053, 1055 (5th Cir. 1985) (plaintiff asserted no deprivation of constitutional right where she was arrested on a facially valid warrant because of an honest mistake).

Barton arrested Blackwell pursuant to a facially valid warrant for Melinda K. Allen. At issue is the question posed by *Hill*, whether he had probable cause to believe Blackwell was Allen, *i.e.,*

10

whether he reasonably mistook Blackwell for Allen. Couched in terms of qualified immunity, however, we must address one further level of reasonableness and ask ourselves whether a reasonable officer in Barton's position could believe that there was reasonable cause to believe that Blackwell was the person named in the warrant. *Anderson v. Creighton*, 107 S.Ct. 3034 (1987).[3] "The relevant question in this case, for example, is the objective (albeit fact-specific) question whether a reasonable officer could have believed [Barton's arrest of Blackwell on the warrant naming Allen] to be lawful, in light of clearly established law and the information [Barton] possessed." *Anderson*, 107 S.Ct. at 3040.

In this case, no inference can be drawn that Barton knew or believed he was or likely was arresting someone other than Melinda Allen. The person he arrested was of the same height and weight, sex, race, age, nickname, and at the location where he expected to find Melinda Allen. There is no evidence that Barton had available information as to Allen's skin tone or facial features. Moreover, discrepancies in hair and eye color or skin tone are not determinative in this day when use of hair dyes, cosmetic contact lenses, and tanning salons is relatively common.

Blackwell relies on the fact that Barton took her driver's license and put it in his pocket without looking at it as evidence that he acted unreasonably. This is not determinative. The question is only whether a reasonable officer, in Barton's position

---

[3]    *Anderson* concerned facts similar to those at issue here, but in the context of a warrantless search of an innocent third party's home rather than an allegedly illegal arrest of the wrong person.

11

(with Blackwell's driver's license in his pocket) could believe that Blackwell was Allen, not whether a reasonable officer would have looked at the driver's license to confirm the name and other identifying information.[4] *See Hunter v. Bryant*, 112 S.Ct. 534, 537 (1991) ("[T]he court should ask whether the agents acted reasonably under settled law *in the circumstances*, not whether another reasonable, or more reasonable, interpretation of the events can be constructed . . . .") (emphasis added).

In *United States v. De Leon-Reyna*, 930 F.2d 396 (5th Cir. 1991) (*en banc*), a United States Border Patrol agent noticed a suspicious truck near the Texas-Mexico border and radioed in the truck's license plate number to a dispatcher. The dispatcher misunderstood the number given and radioed back the information that the plates were issued to a truck different from that the agent was following. The agent stopped the truck; a later search of the truck revealed over half a ton of cocaine.

The defendant moved to suppress the evidence, on the ground that the initial stop was without reasonable suspicion because the agent had not followed the standard procedure of using code words when radioing in the license plate letters. The district court

---

[4] In addition, even had Barton looked at the license and realized that the name was not that of Melinda K. Allen, a reasonable officer still might have believed that Blackwell was Allen. The Supreme Court has held that officers in good faith believed an arrestee was their suspect even after the arrestee had produced identification to show that he was not the man they were seeking, observing that "aliases and false identifications are not uncommon." *Hill v. California*, 91 S.Ct. at 1110. Here, while Blackwell told Barton she "had not signed any hot checks," there is nothing to indicate that she ever suggested there might be a mistake of identity, or stated her name, until at the station just before she was released.

12

granted the motion to suppress. This Court, sitting *en banc*, reversed. We determined that, regardless of whether the agent acted negligently in calling in the license plate information, his good faith reliance on the license information was objectively reasonable in the circumstances. 930 F.2d at 399. We observed that the code word policy was not constitutionally mandated, nor did it establish "a constitutional minimum for reliability." *Id*. at 400.

Similarly, under the facts in the present case, we may not determine the reasonableness of Barton's actions by considering, with the benefit of hindsight, what other, more reasonable actions might have been available to him.

Because a reasonable officer in Barton's position could have believed that there was reasonable cause to believe Blackwell was Melinda Allen, Barton is entitled to qualified immunity.

IV. Propriety of Summary Judgment for Barton

Summary judgment is appropriate only where there are no disputed issues of material fact. Counsel for Blackwell asserted during oral argument that summary judgment for Barton is improper, alleging that the similarity of appearance, or lack thereof, between his client and Melinda Allen is material to the reasonableness of Barton's mistake. This issue was raised below by an affidavit of someone who knew both women attesting that they did not look alike, as their hair and eye color, skin tone, and facial features were different. The affidavit does not suggest any contradiction of what is otherwise shown by the evidence, namely that both are of the same sex, race, age, height, weight, and

13

nickname and did similar type work. The district court concluded that "Blackwell's appearance substantially matched the physical description of Melinda Allen that Barton had earlier obtained from his dispatcher." We hold that, under the circumstances, the similarities between Blackwell and Allen were sufficient to allow a reasonable officer to conclude therefrom that there was probable cause to believe that Blackwell was Allen.

To the extent underlying facts are undisputed, as they essentially are here, we may resolve questions such as probable cause and reasonable suspicion as questions of law. *Hunter v. Bryant*, 112 S.Ct. 534, 537 (1991). *See also Crescent City v. Butchers' Union*, 7 S.Ct. 472, 476 (1887) ("when there is no dispute of fact, the question of probable cause is a question of law, for the determination of the court"); *United States v. Kye Soo Lee*, 962 F.2d 430, 435 n.17 (5th Cir. 1992), *cert. denied*, 113 S.Ct. 1057 (1993) (where determinative facts are not disputed, probable cause is a question of law); *United States v. Basey*, 816 F.2d 980, 988 (5th Cir. 1987) (reasonableness in investigatory stop cases ultimately a question of law).

Because we conclude, as discussed above, that Barton's actions were objectively reasonable under *Anderson v. Creighton*, he is entitled to judgment as a matter of law on his plea of qualified immunity. We remand this case to the district court for entry of judgment for Barton on Blackwell's section 1983 claims.

## Conclusion

For the reasons stated above, the order of the district court denying summary judgment to defendant Barton is REVERSED, and the

14

cause is REMANDED for proceedings consistent with this opinion.

REVERSED AND REMANDED