**Zeta CRADDOCK, Individually, and Ashley Arrendale, a Minor, by and Through Her Mother and Adult Next Friend Plaintiffs**

v.

**Eric HICKS, Individually and In His Official Capacity as a Police Officer of Greenwood, Mississippi; Ronnie White, Individually and in His Official Capacity as Chief of Police of Greenwood, Mississippi; and the City of Greenwood, Mississippi Defendants**

No. 4:02 CV 216.

United States District Court, N.D. Mississippi, Delta Division.

Oct. 23, 2003.

**650**

Gregory S. Park, Gregory S. Park, Attorney, David L. Calder, Rutherford Calder Attorneys, Oxford, MS, for Zeta Craddock, individually, Ashley Arrendale, a minor, by and through her mother and adult next friend, plaintiffs.

Gary E. Friedman, Chelye Prichard Amis, Michael Chadwick Smith, Phelps Dunbar, Jackson, MS, for Eric Hicks, individually and in his official capacity as a Police Officer of Greenwood, Mississippi, Ronnie L. White, Individually and in His Official Capacity as Chief of Police of Greenwood, Mississippi, City of Greenwood, Mississippi, defendants.

## ORDER

MILLS, District Judge.

This cause comes before the Court on the defendants' motion to dismiss [21–1] and the plaintiffs' cross-motion for partial summary judgment [22–1]. The Court has reviewed the briefs and exhibits and is prepared to rule. The plaintiffs are Zeta Craddock and her twelve-year-old daughter Ashley Arrendale. The defendants include Eric Hicks, a Greenwood Police Officer; Greenwood Chief of Police Ronnie White; and the City of Greenwood itself ("the City").

The facts of this case are largely undisputed. On May 21, 2001, while transporting her daughter to school, Craddock was involved in a traffic accident with a vehicle operated by a woman named Sandra Bordelon. After the accident, the vehicles moved off the road to the parking lot of a nearby convenience store. Officer Eric Hicks was dispatched to the scene. After taking statements from Craddock and Bordelon, he radioed their driver's license and tag information to the dispatcher at the Greenwood police station. The dispatcher informed Officer Hicks that both tags were valid but that Bordelon was driving with a suspended license. However, when Officer Hicks attempted to arrest Bordelon on a misdemeanor charge of driving without a license, he mistook Craddock for Bordelon and arrested her by mistake. Craddock insisted that her license was valid and repeatedly asked Hicks to verify her license to no avail. However, Craddock never verbally informed Hicks that she was not Bordelon, as she was apparently unaware that the basis for the arrest was mistaken identity.

While arresting Craddock, Officer Hicks thoughtfully recommended that someone be contacted to pick up Ashley from the station, and the store clerk, who apparently knew both Craddock and Ashley, re-

sponded that she would help contact someone to pick her up. Craddock apparently did not object to this suggestion. Ashley's father, Curt Arrendale, arrived about 45 minutes later to pick her up. Within minutes of her arrival at the Greenwood police station, authorities quickly realized that Craddock's arrest had been in error, and Officer Hicks then apologized and gallantly returned her to her vehicle. Bordelon was later arrested and fined for driving with a suspended license and without insurance.

On August 20, 2002, Craddock and Ashley filed this action in the Leflore County Circuit Court against Officer Hicks and Police Chief Ronnie White, both individually and in their official capacity, and against the City. The suit alleged violations of the plaintiffs' civil rights under 42 U.S.C. § 1983 and state law claims. The defendants timely removed to federal court, citing the existence of a federal question. The defendants now seek summary judgment, and the plaintiffs have filed a cross-motion for partial summary judgment.

## ANALYSIS

Summary judgment is appropriate when the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). An issue of material fact is genuine if a reasonable jury could return a verdict for the nonmovant. *Anderson v. Liberty Lobby*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). In reviewing the evidence, this Court must draw all reasonable inferences in favor of the nonmoving party, and avoid credibility determinations and weighing of the evidence. *Reeves v. Sanderson Plumbing Prods. Inc.*, 530 U.S. 133, 120 S.Ct. 2097, 2110, 147 L.Ed.2d 105 (2000). In so doing, the Court must disregard all evidence favorable to the moving party that the jury is not required to believe. *Reeves*, 120 S.Ct. at 2110.

Section 1983 provides a cause of action for persons who have been "depriv[ed] of any rights, privileges, or immunities secured by the Constitution and laws" of the United States by a person or entity acting under color of state law. 42 U.S.C. § 1983 (1994). However, the Supreme Court has established that "government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982).

Claims of qualified immunity are analyzed under a two-step test. *Price v. Roark*, 256 F.3d 364, 369 (5th Cir.2001). First, the Court must consider whether the facts alleged show that the defendant's conduct violated a constitutional right. *Price*, 256 F.3d at 369. If it does not, then the defendant is entitled to qualified immunity. *Id.* If the allegations do make out a constitutional claim, the Court must next consider whether the right was clearly established at the time of the offense. *Id.* If the defendant makes a reasonable mistake as to what the law requires, he is entitled to immunity. *Id.*

In other words, even if a constitutional violation occurred, the defendant is still entitled to qualified immunity if his conduct was objectively reasonable. *Blackwell v. Barton*, 34 F.3d 298, 303 (5th Cir.1994). The qualified immunity privilege is intentionally broad and intended to provide "ample protection to all but the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs*, 475 U.S. 335, 341, 106 S.Ct. 1092, 1096, 89

L.Ed.2d 271 (1986). The plaintiff carries the burden of proving that qualified immunity does not apply. *McClendon v. City of Columbia*, 305 F.3d 314, 323 (5th Cir. 2002).

■ A § 1983 suit against a person in his official capacity is functionally equivalent to "pleading an action against an entity of which the officer is an agent." *Monell v. New York City Dep't. of Soc. Servs.*, 436 U.S. 658, 690 n. 55, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). Unlike government officials sued in their individual capacities, municipal entities and local governing bodies may not claim qualified immunity under § 1983. *Leatherman v. Tarrant County Narcotics Intelligence and Coordination Unit*, 507 U.S. 163, 166, 113 S.Ct. 1160, 122 L.Ed.2d 517 (1993).

■ Under *Monell*, a local government is liable under § 1983 for its policies that cause constitutional torts which may have been established by the government's lawmakers, "or by those whose edicts or acts may fairly be said to represent official policy." *Monell*, 436 U.S. at 694, 98 S.Ct. 2018, 56 L.Ed.2d 611. However, municipalities cannot be held liable under § 1983 on a respondeat superior theory, but only "when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury." *Id.* at 694, 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611.

The official policy requirement can be satisfied in any of the following ways:

1. When the appropriate officer promulgates a generally applicable statement of policy and the act complained of is simply an implementation of that policy;

2. Where no official policy was announced but the action of the policymaker itself violated a constitutional right; or

3. When the policymaker fails to act affirmatively at all, if the need to take some action to control the agents of the local governmental is so obvious and the inadequacy of the existing practice so likely to result in the violation of constitutional rights that the failure to act rises to the level of deliberate indifference to the need.

*Burge v. Parish of St. Tammany*, 187 F.3d 452, 471 (5th Cir.1999)(internal citations omitted). With the preceding legal principles in mind, the Court now turns to the claims of Craddock and Arrendale.

## I. ASHLEY'S CLAIMS.

■ First, the Court finds that Ashley does not have a viable cause of action against any of the defendants. The sole constitutional injury of which Ashley complains is that she was left at the convenience store by Officer Hicks for approximately forty-five minutes before her father arrived to pick her up. Assuming arguendo that this is a constitutional violation, the Court finds that Officer Hicks' decision to leave her at the store was not objectively unreasonable since it appears that she was left under the supervision of an adult who was known to Craddock and Ashley.

The Court agrees with the plaintiffs that a state actor may be held liable in some situations for placing a citizen in a dangerous situation created through the actions of the state actor, i.e. the "state-created danger" doctrine. *See generally Scanlan v. Texas A & M University*, 343 F.3d 533, 537–38 (5th Cir.2003)(stating that to prove elements of state-created danger, plaintiff must show defendants "used their authority to create a dangerous environment for the plaintiff and that the defendants acted with deliberate indifference to the plight of the plaintiff"). To establish deliberate indifference to Ashley's plight, the plaintiffs must show that the "environment created

by the state actors must be dangerous; they must know it is dangerous, and ... they must have used their authority to create an opportunity that would not otherwise have existed" for the plaintiff to be harmed. *Scanlan,* 343 F.3d at 533.

Here, however, there is no indication that Ashley was ever in any danger or that she suffered any injury attributable to being left at the convenience store under an adult's supervision. Furthermore, even if Ashley could demonstrate a cognizable injury, Officer Hicks' is still entitled to qualified immunity because his actions were not objectively unreasonable under the circumstances. Accordingly, summary judgment is proper for all of Ashley's claims.

## II. CRADDOCK'S § 1983 CLAIMS AGAINST CHIEF WHITE AND THE CITY.

▉ Next, the Court turns to Craddock's claims against Chief White and the City of Greenwood. The Court perceives no basis for individual liability against Chief White, who did not participate in Craddock's arrest in any way. Likewise, the Court perceives no official or even unofficial policy promulgated by either Chief White or the City which resulted in Craddock's wrongful arrest, which was clearly the result of negligence on the part of Officer Hicks. The absence of any such official policy is fatal to Craddock's claims against the City and against Chief White in his official capacity.

## III. CRADDOCK'S § 1983 CLAIMS AGAINST HICKS.

Craddock's claims against Hicks in his official capacity must be dismissed for the same reason as her claims against the City. Turning to Craddock's claims against Hicks in his individual capacity, both parties argue at length about whether Hicks had probable cause to arrest Bordelon. Hicks argues that if he had probable cause to arrest Bordelon then he cannot be liable

for accidentally arresting Craddock by mistake, relying on *Blackwell v. Barton,* 34 F.3d 298 (5th Cir.1994). In *Blackwell,* a Texas peace officer sought to arrest a woman named Mindy Allen who was known to work at an area health spa on charges of writing bad checks. *Blackwell,* 34 F.3d at 300. When the officer went to one such health spa and asked to speak to "Mindy," he was directed to a woman named Mindy Blackwell who worked at the spa and who had a similar appearance. Although Blackwell denied writing any bad checks and provided the officer with her driver's license, the officer put it into his pocket without checking it and arrested her anyway. *Id.*

The Fifth Circuit held that the Fourth Amendment is not violated when police arrest the wrong person if the arresting officer had a reasonable, good faith belief that he was arresting the correct person. *Id.* at 303. The Fifth Circuit further held that the question was "only whether a reasonable officer, in Barton's position (with Blackwell's driver's license in his pocket) could believe that Blackwell was Allen, not whether a reasonable officer would have looked at the driver's license to confirm the name and other identifying information." *Id.* at 304.

▉ The Court finds that *Blackwell* is distinguishable from the case at bar. In *Blackwell,* as the Fifth Circuit noted, the officer went to a location he expected to find the arrestee, gave the arrestee's name, and was directed to a woman with the same first name and a similar appearance. In the case at bar, however, Craddock and Bordelon were both present at the scene, and there is no indication that they looked at all similar. More importantly, the sole basis for arresting Bordelon was because of her license which Hicks verified as suspended, and this entire incident could have been avoided had Hicks

simply glanced at the suspended license before arresting its putative owner. Consequently, while the officer in *Blackwell* may have been negligent in not looking at Blackwell's license after receiving it, Hick's negligence in not matching the suspended license to its proper owner *who was present at the time* rises above mere negligence to the level of plain incompetence, which as was noted above, is not shielded by qualified immunity.

Under the facts of this case, Hicks' arrest of Craddock after failing to verify her identity was not an objectively reasonable mistake, and qualified immunity does not bar Craddock's § 1983 claim against Hicks in his individual capacity. Since qualified immunity does not apply and there are no disputed facts surrounding Hicks' improper arrest of Craddock, the Court finds that summary judgment in Craddock's favor is proper on this issue.

## IV. CRADDOCK'S STATE LAW CLAIMS.

The parties agree that Craddock's state law claims are governed by the Mississippi Tort Claims Act (the "MTCA"). Under the MTCA, neither Hicks nor White may be held personally liable for acts occurring within the scope and course of their employment. Miss. Code Ann. § 11–46–7(2). Accordingly, Craddock's individual claims against the two are dismissed.

However, under the MTCA, a governmental entity such as the City may be held liable for Hicks' actions within the scope of his employment if Hicks "acted in reckless disregard for the safety and well-being of any person not engaged in criminal activity at the time of the injury." Miss.Code Ann. § 11–46–9(1)(c). Hicks concedes that Craddock was not engaged in any criminal activity at the time of her arrest. Accordingly, the City may be held liable for her arrest if Hicks' conduct rises to the level of reckless disregard. *Maldonado v. Kelly*, 768 So.2d 906, 909 (Miss.2000)(holding that police officer did not exhibit reckless disregard for safety and well-being of others by negligently causing auto accident where officer looked both ways at intersection even though view was partially blocked).

While reckless disregard is not defined by the statute, the Mississippi Supreme Court has held it to be "more than ordinary negligence, but less than an intentional act." *City of Jackson v. Brister*, 838 So.2d 274, 280 (2003). In *Maldonado*, the Supreme Court cited a Fifth Circuit definition of reckless as meaning that an actor has intentionally performed "an act of unreasonable character in reckless disregard to the risk known to him, or so obvious that he must be taken to have been aware of it, and so great as to make it highly probable that harm would follow." *Maldonado*, 768 So.2d at 910 (quoting *Orthopedic & Sports Injury Clinic v. Wang Labs., Inc.*, 922 F.2d 220, 224 n. 3 (5th Cir.1991)).

The Mississippi Supreme Court has also defined the related concept of wantonness by stating that "wantonness is a failure or refusal to exercise any care, while negligence is a failure to exercise due care." *Turner v. City of Ruleville*, 735 So.2d 226, 227 (Miss.1999)(quoting *Beta Beta Chapter of Beta Theta Pi v. May*, 611 So.2d 889, 895 (Miss.1992)). In *Turner*, the Court held that an officer acted with reckless disregard in releasing a visibly intoxicated driver to continue driving who was involved a in traffic accident shortly thereafter. *See also Maye v. Pearl River County*, 758 So.2d 391, 395 (Miss.1999)(officer showed reckless disregard by backing up incline entrance when he could not see if way was clear resulting in collision); *City of Jackson v. Perry*, 764 So.2d 373, 377–78 (Miss.2000)(officer acted with reckless disregard by speeding while on route to dinner with co-workers resulting in collision).

The Court notes that much of the Mississippi precedent in this area deals with police officers who have actually injured citizens while in the performance of their duties. There are no cases directly on point dealing with the reckless disregard standard in the context of a wrongful arrest. However, at a bare minimum, a police officer has a duty to make his best effort to arrest the right person when the facts of the crime are obvious, the identity of the criminal is known and no emergency or dangerous conditions are present. The barest minimum standards of common sense and good judgment demand an arresting officer at least compare the photo on a license to the appearance of his captive. Officer Hicks' inability to correctly identify the owner of the suspended license resulted in a grievous violation of Zeta Craddock's rights as a free citizen to live without fear of unlawful arrest. This Court has no difficulty concluding that such obnoxious disregard for the rights of others sufficiently establishes actionable recklessness under these facts. Accordingly, Craddock is entitled to summary judgment against the City on her claims brought under the MTCA.

## CONCLUSION

Based on the foregoing analysis, the Court finds that summary judgment is proper for (1) all of Ashley Arrendale's claims, (2) all of Zeta Craddock's § 1983 claims against Ronnie White and the City of Greenwood,(3) Zeta Craddock's § 1983 claims against Eric Hicks in his official capacity, and (4) all of Zeta Craddock's state law claims against Hicks and White.

The Court further finds that Zeta Craddock is entitled to partial summary judgment (1) on the issue of liability under § 1983 against Eric Hicks in his individual capacity and (2) on the issue of liability for Craddock's state law claims against the City of Greenwood. A separate order to that effect shall issue this day.

## ORDER

Pursuant to the memorandum opinion issued this day, it is hereby ORDERED:

1. that the defendants' motion for summary judgment [21–1] is GRANTED with regard to:

a) all claims brought by Ashley Arrendale;

b) all claims brought by Zeta Craddock under 42 U.S.C. § 1983 against Ronnie White, both individually and officially; the City of Greenwood; and Eric Hicks in his official capacity; and

c) all state law claims brought by Zeta Craddock against Ronnie White and Eric Hicks;

2. that the defendants' motion for summary judgment is otherwise DENIED; and

3. that the plaintiffs' motion for partial summary judgment [22–1] is GRANTED with regard to:

a) Eric Hicks' liability under 42 U.S.C. § 1983; and

b) the City of Greenwood's liability to Craddock for her state law claims.