James T. MITCHELL, Jr. and Matthew Weghorst, Plaintiffs

v.

CITY OF JACKSON, MISSISSIPPI; Robert Moore, Individually, and in his official capacity as duly Commissioned and appointed Police Chief of The City of Jackson, Mississippi; Kent Daniels, individually, and in Official capacity as a duly Commissioned Police Officer of The City of Jackson, Mississippi; Norman Presson, individually and in his official capacity as a duly Commissioned Arson Investigator of City of Jackson, Mississippi; Vernon Hughes, individually, and in his official capacity as a duly Commissioned Arson Investigator of The City of Jackson, Mississippi, Defendants.

Civil Action No. 3:04CV574LN.

United States District Court,
S.D. Mississippi,
Jackson Division.

Jan. 26, 2006.

Robert L. Williamson, Robert Louis Williamson, PA, Jackson, MS, for Plaintiffs.

Pieter Teeuwissen, Pieter Teeuwissen, Esq., PLLC, Arnold D. Lee Butler, Snow, O'Mara, Stevens & Cannada, Jackson, MS, for Defendants.

## MEMORANDUM OPINION AND ORDER

TOM S. LEE, District Judge.

This cause is before the court on the motion of defendants City of Jackson, Jackson Police Chief Robert Moore, Officer Kent Daniels with the City of Jackson Police Department (JPD), and JPD Arson Investigators Norman Presson and Vernon Hughes, for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure. Plaintiffs James T. Mitchell

and Matthew Weghorst have responded in opposition to the motion and the court, having considered the memoranda of authorities, together with attachments, submitted by the parties, concludes that defendants' motion is well taken and should be granted.

On August 28, 2002, plaintiffs James Mitchell and Matthew Weghorst were arrested for the murder of Eddie Williams. The charges were ultimately dismissed, following which plaintiffs filed the present action seeking to recover damages for what they contend was an unlawful arrest and detention, asserting claims under 42 U.S.C. § 1983, alleging that the defendants violated their Fourth and Fifth Amendment rights by arresting and detaining them without probable cause, and asserting pendent state law claims of false arrest and imprisonment, malicious prosecution, and intentional and/or negligent infliction of emotional distress. Plaintiffs named as defendants Jackson Police Officers Kent Daniels and Vernon Hughes, the arresting officer and arson investigator, respectively, in their official and individual capacities; Police Chief Robert Moore, in his individual and official capacity; Norman Presson, Chief of the Arson Division of the Jackson Police Department, in his individual and official capacity; and the City of Jackson.

Defendants seek summary judgment on all of plaintiffs' claims on a variety of grounds, principal among which is their argument that plaintiffs have no actionable claim against them under either federal or state law inasmuch as the undisputed facts plainly establish that there was probable cause for plaintiffs' arrest. The court agrees, and accordingly concludes that summary judgment should be entered for defendants.

■ The law is clear: If the officers had probable cause to arrest plaintiffs for the murder of Eddie Williams, then plaintiffs have no claim under either § 1983 or under state law for false arrest/imprisonment, malicious prosecution or intentional infliction of emotional distress.[1] *See Haggerty v. Texas Southern Univ.,* 391 F.3d 653, 655 (5th Cir.2004) ("To ultimately prevail on [a] section 1983 false arrest/false imprisonment claim, [the plaintiff] must show that [defendants] did not have probable cause to arrest him."); *Granger v. Slade,* 361 F.Supp.2d 588, 593 (S.D.Miss. 2005) (absence of probable cause is an essential element of causes of action for false arrest/imprisonment and malicious prosecution); *Croft v. Grand Casino Tunica, Inc.,* 910 So.2d 66, 75–76 (Ms. Ct.App. 2005) ("If there is probable cause for the charges made, then the plaintiff's arrest is supported by probable cause, and a claim for false arrest must fail."); *Croft,* 910 So.2d at 75 (where behavior which the plaintiff claimed caused an intentional infliction of emotional distress on him was the defendants' having him arrested, there was no "outrageous, extreme and utterly

---

1. Plaintiffs' putative cause of action for negligent infliction of emotional distress, which presumably is also based on their arrest, detention and prosecution, fails to state a claim for relief, under federal law, *see Grandstaff v. City of Borger, Tex.,* 767 F.2d 161 (5th Cir. 1985) ("[T]here is no constitutional right to be free from such distress and, thus, no liability for such distress under 42 U.S.C.A. § 1983."), and under state law, *see* Miss.Code Ann. § 11–46–7(1) (providing Mississippi Tort Claims Act is "the exclusive civil remedy against a governmental entity or its employee for acts or omissions which give rise to a suit"), and Miss.Code. Ann. § 11–46–9(1)(c) (providing exemption from liability for law enforcement activities, unless "the employee acted in reckless disregard of the safety and well-being of any person not engaged in criminal activity at the time of injury"); *see also Kelley v. Grenada County,* 859 So.2d 1049 (Miss.Ct.App.2003) (where governmental actor is a law enforcement officer, then in order "for liability to exist, there must be reckless and not merely negligent conduct").

intolerable actions on the defendants' part in filing criminal charges" where defendants had probable cause to file the charges).

■ As noted by this court in *Granger,* "Probable cause exists 'when the totality of the facts and circumstances within a police officer's knowledge at the moment of arrest are sufficient for a reasonable person to conclude that the suspect had committed or was committing an offense."

*Id.* (quoting *Haggerty v. Texas Southern Univ.,* 391 F.3d 653, 655–56 (5th Cir. 2004)).

The totality of the facts and circumstances known to Officer Daniels at the time of plaintiffs' arrest are these: Shortly after 3:00 a.m. on August 28, 2002, the police department received a 911 call reporting a car on fire at 3 Meadowood Circle in the City of Jackson. When police and fire department personnel arrived, they discovered a car engulfed in flames, and a dead, burned body in the passenger seat of the vehicle. The victim was later identified as Eddie Williams. While on the scene, police officers learned that the burning vehicle, a 1993 Porsche, belonged to plaintiff James Mitchell, who had arrived on the scene, along with Matthew Weghorst, shortly before emergency personnel. Defendant Vernon Hughes, an investigator with the Jackson Police Department's Arson Unit, determined that the vehicle had been set on fire with some type of accelerant, and an arson dog alerted to both Mitchell and Weghorst for some type of accelerant on their clothing.

While on the scene, Officer Daniels spoke with Shannon Wasson, a resident of Meadowood who had made the 911 call reporting the fire. Ms. Wasson told Daniels that around 1:30 a.m., she and her nephew saw a white Porsche with its engine running and two white males standing in front of it. The vehicle, she said, was smoking a little at that time. Ms. Wasson told officers that she thought nothing of this, since the two men appeared to be working on the car, so she returned to watching a movie. However, around 3:00 a.m., as she was getting ready for bed, she saw a flash from her window. She looked out and saw the car on fire and heard two explosions. She immediately called 911 and ran to wake the occupants of the house where the car was burning. Ms. Wasson reported that two vehicles pulled up to the scene, a Lexus-looking car and a black truck, with several people in them screaming and crying. When Ms. Wasson went over to talk to them, she saw that one guy (Mitchell) looked "just like the guy" she had seen earlier in front of the car.

With this information, Officer Daniels took Mitchell and Weghorst to the police station for questioning. The two men told officers that they had been out drinking that night at a local bar with a friend, Eddie Williams, who was at that time believed (though not yet confirmed) to have been the deceased occupant of the vehicle. Plaintiffs told the officers that when they left Fenian's, heading to another bar, Time Out Sports Bar, Mitchell rode with Weghorst in Williams' vehicle and Williams drove Mitchell's car (the Porsche) because Mitchell was too drunk to drive. Mitchell and Weghorst stated that after arriving at Time Out, they waited for Williams, but he never arrived. When they finally left Time Out around 3:30, they headed toward Williams' apartment looking for him, and saw the burning car as they turned onto Williams' street. They denied any knowledge of or involvement in the fire and Williams' death and maintained they had last seen him when they left Fenian's.

In determining whether this information created probable cause, the relevant inquiry is not whether these plaintiffs were guilty of the crime for which they were

arrested and charged, for there is no guarantee in the law that only the guilty will be arrested and charged with crimes. *See Baker v. McCollan,* 443 U.S. 137, 145, 99 S.Ct. 2689, 2695, 61 L.Ed.2d 433 (1979) ("The Constitution does not guarantee that only the guilty will be arrested. If it did, § 1983 would provide a cause of action for every defendant acquitted-indeed, for every suspect released."); *see also Morris v. Dillard Dept. Stores, Inc.,* 277 F.3d 743, 754 (5th Cir.2001) ("Whether the crime actually occurred or whether a suspect is eventually convicted is irrelevant to the probable cause analysis. The inquiry focuses only on what the officer could have reasonably believed at the time based on the relevant law, as well as the facts supplied to him by the eyewitness."); *Keen v. Simpson County,* 904 So.2d 1157, 1161 (Miss.Ct.App.2004) (so long as probable cause exists for an arrest, a suit for false arrest and malicious prosecution will not lie even when the defendant is subsequently tried and found "not guilty").

Thus, "[i]n making a determination of probable cause, [the court] do[es] not require a police officer to be perfect, nor do[es][it] want him always to err on the side of caution out of the fear of being sued." *Martin v. Thomas,* 973 F.2d 449, 453 (5th Cir.1992). What is required is that the officer make a reasonable determination of whether probable cause exists. The question, then, is

> whether, at the moment the arrest was made, the officers had probable cause to make it-whether at that moment the facts and circumstances within their knowledge and of which they had reasonably trustworthy information were

sufficient to warrant a prudent man in believing that the petitioner had committed or was committing an offense.

*Martin,* 973 F.2d at 453.

■ Here, the court would obviously agree with plaintiffs that the mere fact that the victim, Williams, was driving Mitchell's car on the night he was murdered would not constitute probable cause to arrest the plaintiffs for his murder. Plaintiffs are also correct that the fact that an arson dog alerted to plaintiffs' clothing would not, without more, create probable cause. Nor would the fact that, so far as police were able to determine from known witnesses, Williams was last seen alive in the company of the plaintiffs in itself constitute probable cause to arrest plaintiffs for murder. However, these circumstances cannot be viewed in isolation, but rather collectively, and in conjunction with the account given to officers by Ms. Wasson, a presumably disinterested witness, that placed Mitchell (or someone who looked "just like" him) in front of the smoking vehicle, "working" on the vehicle, nearly two hours before it erupted in flames. In the court's opinion, given the totality of these circumstances, one could not reasonably conclude that the officers acted without probable cause.

Now, plaintiffs do insist that defendants should have conducted a more thorough investigation prior to arresting them, and certainly, they could have been more exhaustive in their efforts prior to arresting plaintiffs. They could, for example, have interviewed plaintiffs' alibi witnesses at Time Out, who would have told investigators that Mitchell and Weghorst were at the bar when the fire started.[2] And they

---

**2.** However, the court would note that although it was represented that plaintiffs' alibi witnesses could account for plaintiffs' whereabouts at the time of the fire, it is unlikely that their statements would have undermined the officers' reasonable belief that plaintiffs com-

mitted the murder. Ms. Wasson never claimed that the two white men she saw around 1:30 (one of whom looked just like Mitchell) remained continuously at the scene. She merely saw them there around 1:30 and then saw some persons, one of whom looked

could have conducted chemical analysis of plaintiffs' clothing in an effort to confirm the suspected presence of accelerants (which analysis, plaintiffs submit, would not have revealed the presence of accelerants). They could also have investigated Ms. Wasson in an effort to determine just how reliable a witness she was (which plaintiffs contend would have revealed that she was not reliable). However, defendants cannot be held liable for failing to have conducted a more exhaustive investigation when the seemingly trustworthy information reasonably available to them at the time of the arrest would have warranted a prudent man in believing that these plaintiffs had committed the murder.

In the court's opinion, it is manifest that probable cause supported the arrest and detention of plaintiffs, notwithstanding plaintiffs' expert's assertion that he does not believe that probable cause existed and that further investigation was warranted. There being no dispute as to the information known to the officers at the time of plaintiffs' arrest and detention, and the court's being of the opinion that a jury could not reasonably find that the officers acted without probable cause, it follows that defendants are entitled to summary judgment as to all plaintiffs' claims against them.

Even were the court unable to conclude as a matter of law that probable cause did, in fact, exist, the court would still find summary judgment to be in order as to all claims against all defendants.

■ First, as to plaintiffs' § 1983 claims against them in their individual capacities, Officers Daniels and Hughes are entitled to qualified immunity, for even if there was not actual probable cause, there was unde-

niably arguable probable cause for plaintiffs' arrests.[3] Indeed, while plaintiffs' expert testified that he did not believe there was probable cause for the arrests, he explicitly agreed that reasonable, prudent officers could differ over whether or not probable cause existed. The officers are thus entitled to qualified immunity for their actions. *See Granger v. Slade,* 361 F.Supp.2d at 596 (stating that "[t]here must not even arguably be probable cause for the ... arrest for immunity to be lost").

■ Defendants argued in their motion that Officers Moore and Presson were entitled to summary judgment in their individual capacities on the basis that they had no personal involvement or participation in the activities which led to the alleged constitutional deprivation. *See Thompkins v. Belt,* 828 F.2d 298, 303–04 (5th Cir.1987) ("Under section 1983, supervisory officials are not liable for the actions of subordinates on any theory of vicarious liability ... but may be held liable if there exists either (1) his personal involvement in the constitutional deprivation, or (2) a sufficient causal connection between the supervisor's wrongful conduct and the constitutional violation."). In response, plaintiffs have argued that Chief Moore and Chief Presson *were involved* because it was their failure to supervise and/or train Officers Daniels and Hughes which led to plaintiffs' wrongful arrest and detention. That is, they argue that neither Chief Moore nor Chief Presson adequately trained or supervised their officers in the field or took any individual action as administrative agents to prevent or mitigate the injuries to the plaintiffs. However, as defendants cor-

---

just like Mitchell, arrive (or return) to the scene *sometime after 3:00 a.m.*

**3.** The individual defendants apparently neglected to specifically plead the defense of

qualified immunity in their answer, but have now moved to amend their answer to do so. Although plaintiffs oppose that motion to amend, the court is of the opinion that the amendment should be permitted.

rectly observe in their reply brief, plaintiffs have offered no proof of any putative failure to train or supervise beyond their conclusory allegations. They offer no foundational facts that Officers Moore and Presson were directly involved in the training of the arresting officers, and if they were involved, that the training or supervision was inadequate. Accordingly, these defendants are entitled to summary judgment as to the § 1983 claims against them in their individual capacities.

A governmental entity or municipality, as well as officers thereof acting in their official capacity, can be held liable under § 1983 only if an official policy or custom caused the deprivation of a constitutional right. *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). An official policy may consist of a policy statement or regulation that is officially adopted and promulgated by the municipality's lawmaking officers, or a "persistent, widespread practice of city officials or employees, which, although not authorized by officially adopted or promulgated policy, is so common and well settled as to constitute a custom that fairly represents municipal policy." *Barrett v. Kocher*, 127 Fed.Appx. 697, 698, 2005 WL 752780, *1 (5th Cir.2005) (citations omitted). "In narrow circumstances, even a single incident can establish an official policy 'where the facts giving rise to the violation are such that it should have been apparent to the policymaker that a constitutional violation was the highly predictable consequence of a particular policy or failure to train.'" *Id.* (quoting *Burge v. St. Tammany Parish*, 336 F.3d 363, 373 (5th Cir.2003), *cert. denied*, 540 U.S. 1108, 124 S.Ct. 1074, 157 L.Ed.2d 895 (2004)). Plaintiffs here ground their claim against the City on a failure to train theory. However, plaintiffs have failed to present evidence sufficient to create a triable issue with respect to such a claim. *In In re Foust*, the Fifth Circuit explained:

"The failure to provide proper training may fairly be said to represent a policy for which the city is responsible, and for which the city may be held liable if it actually causes injury." *City of Canton v. Harris*, 489 U.S. 378, 390, 109 S.Ct. 1197, 103 L.Ed.2d 412 (1989). To prove that the failure to train rises to the level of a municipal policy, a plaintiff also must satisfy the culpability and causation requirements described above. *Brown*, 219 F.3d at 457. The failure must rise to the level of a deliberate or conscious choice among alternatives. *Canton*, 489 U.S. at 389, 109 S.Ct. 1197, 103 L.Ed.2d 412.

When evaluating whether additional training is constitutionally required, it is necessary to consider whether the department has faced a history of similar problems. *Languirand v. Hayden*, 717 F.2d 220, 227–28 (5th Cir.1983). We also must look to the officers' overall training and must consider the need for additional training in that context. *Canton*, 489 U.S. at 390–91, 109 S.Ct. 1197, 103 L.Ed.2d 412; *Pineda v. City of Houston*, 291 F.3d 325, 334 (5th Cir. 2002).

310 F.3d 849, 862 (5th Cir.2002). Here, plaintiffs have presented no evidence as to the individual defendants' training or supervision. Instead, they appear to conclude that the officers must not have been adequately trained because had they been, they would have known the circumstantial evidence before them did not amount to probable cause but rather was sufficient only to create reasonable suspicion and indicate a need for further investigation. Such reasoning is patently unsupportable. In short, plaintiffs have offered no evidence that the City's training was inadequate or that inadequate training was a "moving force" behind the alleged improper arrests. The City, and its officers in their official capacities, are therefore enti-

tled to summary judgment on plaintiffs' § 1983 claims.

Turning to plaintiffs' state law claims, the Mississippi Tort Claims Act provides the exclusive remedy against a governmental entity and its employees for acts or omissions which give rise to a suit. *See* Miss.Code. Ann. § 11–46–7(a). Under the Act, employees may be sued only as an official representative of the political subdivision. *In re Foust,* 310 F.3d 849, 863 (5th Cir.2002) ("[N]o employee shall be held personally liable for acts or omissions occurring within the course and scope of the employee's duties."). Moreover, the Tort Claims Act exempts a governmental entity and its employees from liability for law enforcement activities, unless "the employee acted in reckless disregard of the safety and well-being of any person not engaged in criminal activity at the time of injury." Miss.Code Ann. § 11–46–9.

 Inasmuch as it is beyond dispute that, to the extent they were involved at all in the arrest and detention of plaintiffs, officers Moore, Presson, Hughes and Daniels, as individuals, were acting in the course and scope of their duties as police officers, plaintiffs' state law claims against them, as individuals, are due to be dismissed. *See Craddock v. Hicks,* 314 F.Supp.2d 648, 654 (N.D.Miss.2003) (dismissing the plaintiff's individual claims against police defendants). Further, assuming plaintiffs were not engaged in criminal activity, then in order to recover, they must show that the defendants acted in reckless disregard of their safety and well-being. *See Craddock,* 314 F.Supp.2d

at 654. "[R]eckless disregard is a higher standard than gross negligence and 'embraces willful or wanton conduct which requires knowingly and intentionally doing a thing or wrongful act.'" *Collins v. Tallahatchie County,* 876 So.2d 284, 287 (Miss. 2004) (quoting *Turner v. City of Ruleville,* 735 So.2d 226, 230 (Miss.1999)). In the case at hand, particularly given that plaintiffs' own expert agreed that a reasonable prudent police officer could differ over whether or not probable cause existed for plaintiffs' arrests, and opined that their arrests were not in bad faith, no reasonable jury could conclude that defendants' actions amount to reckless disregard of plaintiffs' safety and well-being.[4] For these reasons, in addition to the fact that there was probable cause for the arrests, defendants are entitled to dismissal of plaintiffs' state law claims against them.

Based on the foregoing, it is ordered that defendants' motion for summary judgment is granted.

A separate judgment will be entered in accordance with Rule 58 of the Federal Rules of Civil Procedure.

---

**4.** Plaintiffs have not responded on the merits to defendants' invocation of immunity under the Tort Claims Act, and have instead merely argued that defendants are foreclosed from reliance on the immunity afforded by the Act since they failed to respond to the notice of claim required by the Act to be provided to the City as a prerequisite to instituting suit. *See* Miss.Code Ann. § 11–46–11. However, the Act does not require an entity to respond to a notice of claim in order to preserve immunity. *See id.*