# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

May 1, 2012

No. 11-60482

Lyle W. Cayce
Clerk

CONNIE MCALLISTER,

Plaintiff–Appellant

v.

DESOTO COUNTY, MISSISSIPPI; JASON COLEMAN, In his individual capacity; TARRA DAVIS, In her individual capacity,

Defendants–Appellees

Appeal from the United States District Court
for the Northern District of Mississippi
USDC No. 2:09-CV-163

Before KING, BARKSDALE, and PRADO, Circuit Judges.

PER CURIAM:[*]

Plaintiff–Appellant Connie Jo McAllister brought this action against two Desoto County officers, Jason Coleman and Tarra Davis, asserting claims under 42 U.S.C. § 1983 for unlawful arrest in violation of her Fourth Amendment rights. Plaintiff also asserted a state-law gross negligence claim against Desoto County, Mississippi. The district court granted summary judgment in favor of the Defendants–Appellees, finding that the two officers were entitled to qualified

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 11-60482

immunity and that Desoto County was entitled to sovereign immunity pursuant to the Mississippi Tort Claims Act.  Plaintiff argues on appeal that the district court erred in granting summary judgment in favor of the Defendants.  For the following reasons, we AFFIRM the judgment of the district court.

## I. FACTUAL AND PROCEDURAL BACKGROUND

This case involves the erroneous arrests of Plaintiff–Appellant Connie Jo McAllister ("McAllister") for the sale of cocaine due to mistaken identification. Jason Coleman ("Coleman"), a narcotics officer with the Desoto County Sheriff's Department, and Tarra Davis ("Davis"), a narcotics officer with the Hernando Police Department, were assigned to work for the Desoto County Metro Narcotics Unit, an integrated unit of narcotics investigators.  In February 2008, Charlene Williams ("Williams"), a confidential informant,[1] told Davis that she could set up a narcotics transaction with "Connie Mac."  Due to the suspension of Williams' driver's license, Davis assumed the role of undercover agent and agreed to drive Williams to the location of the drug transactions.  Given Davis' undercover role, Coleman assumed the role of the case agent, who was responsible for managing the investigation and preparing the case file that would be sent to the District Attorney's office.

In April and May 2008, Williams completed three narcotics transactions with "Connie Mac" at a residence in Eudora, Mississippi.  During the three drug transactions, Williams wore audio and video recording devices.  Williams described "Connie Mac" as "short, heavyset," and with short, dark hair. Williams also testified that Davis saw "Connie Mac" during one of the drug

---

[1] Williams had been arrested on drug charges and agreed to act as a law enforcement informant.

No. 11-60482

transactions.[2]  By running the tag number of a truck found at the Eudora residence, the officers identified the drug dealer as "Connie McAllister."

At some point during the investigation, the identifying information for Plaintiff–Appellant McAllister, such as her date of birth and social security number, became part of the criminal case file.[3]  There are disputed facts regarding how McAllister's information was placed in the case file.  Coleman testified that Davis gave McAllister's information to him.  Davis, however, testified that she made no effort to identify "Connie Mac" and provided no such information to Coleman.  The officers' supervisor, Lieutenant Jeremy Degan ("Degan"), testified that McAllister's information came from the Desoto County Sheriff's Department's "Eagle System," which is a database containing information of persons who have been previously arrested or jailed.  Because McAllister had prior arrests, her information was in the Eagle System at the time of the investigation.

In September 2008, Coleman sent the case file, containing McAllister's identification information, to the District Attorney's office.  Coleman and the District Attorney presented the case to the grand jury, who returned an indictment against "Connie McAllister" for one count of the sale of cocaine.

In September 2008, McAllister was arrested in Olive Branch, Mississippi, for driving under the influence.  She was taken into custody and transported to the Desoto County jail in Hernando, Mississippi.  While in custody, McAllister was served with a warrant and an indictment for one count of the sale of cocaine.  After spending four days in jail, McAllister bonded out and was released.

---

[2] Williams also testified that, shortly before the first drug transaction, Davis was present during a photo lineup where Williams correctly identified Connie Faye McAllister as the drug dealer.  Davis denies that she participated in such a photo lineup with Williams.

[3] McAllister is described as having short blond hair and a small build.

3

No. 11-60482

In December 2008, while out on bail, McAllister was served with a warrant and a second indictment for two additional counts of the sale of cocaine. McAllister was arrested and transported to the Desoto County jail, where Williams was also being held. McAllister told a jail officer that she was innocent of the charges and that she had never met Williams. The officer decided to let Williams identify McAllister. When the officer asked Williams if McAllister was the suspect she bought cocaine from, Williams told the officer that McAllister was "not the right girl" and that the drug dealer "didn't look anything like" McAllister. The officers at the jail contacted Coleman regarding the situation, who reported to the jail. After speaking with Williams, McAllister, and his supervisor, Coleman determined that McAllister was not the drug dealer. Coleman told the officers at the jail to "cut [McAllister] loose," and McAllister was immediately released. The charges against McAllister were dismissed. Connie Faye McAllister, the actual drug dealer, was subsequently arrested for the three counts of the sale of cocaine.

On September 22, 2009, McAllister filed the instant lawsuit in the United States District Court for the Northern District of Mississippi. In her amended complaint, McAllister asserted claims against Coleman, Davis, and Desoto County (collectively, the "Defendants"). She contended that her "arrests were caused by the failure of Defendants Coleman and Davis to have any probable cause before causing indictments to be issued against her." McAllister asserted claims under 42 U.S.C. § 1983 against Coleman and Davis, alleging that the officers illegally arrested her in violation of her Fourth Amendment rights. McAllister also asserted a gross negligence claim against Desoto County (the "County") pursuant to the Mississippi Tort Claims Act (the "MTCA" or "Act"), alleging that the County was "liable for the gross negligence" of Coleman and Davis.

No. 11-60482

The Defendants individually filed motions for summary judgment. Coleman and Davis argued that they were entitled to qualified immunity, because McAllister had not established that they violated her constitutional rights or that their actions were objectively unreasonable in light of clearly established law.  Moreover, Coleman and Davis contended that they were protected under the independent intermediary doctrine, because the grand jury issued the indictments and the officers did not knowingly falsify information to that body.  The County argued that it was entitled to sovereign immunity under the MTCA.

McAllister filed briefs in opposition to the motions for summary judgment. With regard to her claims against Coleman and Davis, McAllister argued that the officers were not entitled to qualified immunity because the officers violated her right to be free from arrest without probable cause and the officers did not act in an objectively reasonable manner, but were "plainly incompetent."  With regard to her claim against the County, McAllister argued that the County was not entitled to sovereign immunity under the MTCA because Coleman and Davis acted with "reckless disregard"for McAllister's safety and well-being.

The district court granted the Defendants' motions for summary judgment. With regard to McAllister's illegal arrest claims against Coleman and Davis, the court explained that the officers "clearly had probable cause to arrest 'Connie Mac' for selling cocaine on three occasions, as those incidents were set up and monitored by law enforcement."  The court thus stated that the proper inquiry under the Fourth Amendment was "whether a reasonable officer could believe [that] Connie Jo McAllister was the drug-dealing 'Connie Mac.'" The court explained that it was reasonable for the officers to believe that "Connie Mac's" information would appear in the Eagle System, as many drug dealers have had prior arrests.  Thus, when McAllister's information appeared in the database, it was reasonable for the officers to believe that McAllister was the drug dealer.

5

Furthermore, the district court stated that McAllister presented no evidence that Davis or Coleman's actions in the investigation were malicious or "amounted to more than mere negligence."  Moreover, the court found that the "breaks the causal chain" doctrine applied, which is where an "intermediary's decision breaks the chain of causation for false arrest, insulating the initiating party" from liability.  The court explained that the grand jury returned indictments for McAllister and McAllister did not show that the actions of Coleman or Davis tainted its deliberations.  Based on this analysis, the court held that Davis and Coleman were entitled to qualified immunity because McAllister "failed to show a constitutional violation, that Defendants acted unreasonably, or that the 'breaks the causal chain' doctrine should not apply."

With regard to McAllister's gross negligence claim against the County, the court concluded that the County was entitled to sovereign immunity under the discretionary function exemption of the MTCA.  Based on Mississippi caselaw, the court determined that the investigative decisions of Coleman and Davis arose "from the performance of discretionary functions and involve[d] profoundly difficult policy or judgment considerations."  The court reasoned that their duties were not simply ministerial as "[n]o statute or mandatory procedures to be followed have been cited or provided to the [c]ourt for the instigation of an investigation." Because the officers were performing discretionary functions, the court concluded that the County was immune from liability under the Act.  McAllister timely appealed the district court's judgment.

## II. DISCUSSION

*A. Standard of Review*

We review a district court's grant of summary judgment de novo, applying the same standard as the district court.  *Turner v. Baylor Richardson Med. Ctr.*, 476 F.3d 337, 343 (5th Cir. 2007).  Pursuant to Federal Rule of Civil Procedure 56(a), summary judgment is appropriate "if the movant shows that there is no

genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *See also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). A "genuine" dispute exists if, based on the evidence, a reasonable jury could return a verdict for the nonmoving party. *Hamilton v. Segue Software Inc.*, 232 F.3d 473, 477 (5th Cir. 2000). When reviewing a summary judgment, we "draw all reasonable inferences in favor of the nonmoving party." *Turner*, 476 F.3d at 343 (citations and internal quotation marks omitted).

*B. Qualified Immunity*

Section 1983 provides a cause of action against an individual who, acting under color of state law, has deprived a person of a federally protected statutory or constitutional right. *See* 42 U.S.C. § 1983. "The doctrine of qualified immunity protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). "Qualified immunity balances two important interests—the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." *Id.* The doctrine of qualified immunity "gives government officials breathing room to make reasonable but mistaken judgments, and protects all but the plainly incompetent or those who knowingly violate the law." *Messerschmidt v. Millender*, 132 S. Ct. 1235, 1244-45 (2012) (citations and internal quotation marks omitted).

"A public official is entitled to qualified immunity unless the plaintiff demonstrates that (1) the defendant violated the plaintiff's constitutional rights and (2) the defendant's actions were objectively unreasonable in light of clearly established law at the time of the violation." *Porter v. Epps*, 659 F.3d 440, 445 (5th Cir. 2011) (citation omitted). The Supreme Court has stated that the courts

No. 11-60482

may "exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." *Pearson*, 555 U.S. at 236.

On appeal, McAllister first argues that the district court erred in applying a substantive due process standard to her wrongful arrest claims, instead of the proper Fourth Amendment standard of objective reasonableness. However, we find that the district court correctly applied the Fourth Amendment's standard of objective reasonableness. The court clearly stated that McAllister "seeks to recover against [Davis and Coleman] for arrest without probable cause pursuant to the Fourth Amendment. 'As applied to the qualified immunity inquiry, the plaintiff must show that the officers could not have *reasonably* believed that they had probable cause to arrest the plaintiff for any crime.'" (emphasis added).

Second, McAllister argues that, under this proper Fourth Amendment standard, there are genuine issues of material fact regarding whether the actions of Davis and Coleman were "objectively reasonable." She asserts that "a jury could find that there was no objectively reasonable basis upon which to cause [her] arrest" and that therefore the arrests violated her Fourth Amendment rights. Coleman and Davis argue on appeal that McAllister has not alleged a violation of her Fourth Amendment rights, as the officers reasonably, but mistakenly, believed that they had probable cause to arrest McAllister. They point to the fact that McAllister conceded that this is merely a case of mistaken identity.

In order to establish a Fourth Amendment violation for illegal arrest, McAllister must show that the officers did not have probable cause to arrest her.[4] *Haggerty v. Tex. S. Univ.*, 391 F.3d 653, 655 (5th Cir. 2004). "Probable

---

[4] Ordinarily, in considering a challenge to a post-indictment arrest, we would evaluate the arrest in light of the indictment. *See Gerstein v. Pugh*, 420 U.S. 103, 117 n.19 (1975) (stating that a valid indictment "conclusively determines the existence of probable cause and

cause exists 'when the totality of the facts and circumstances within a police officer's knowledge at the moment of arrest are sufficient for a reasonable person to conclude that the suspect had committed or was committing an offense." *Id.* at 655-56 (citation omitted). The district court was correct to note that, based on the three set-up drug transactions with Williams, Coleman and Davis had probable cause to arrest "Connie Mac" for the sale of cocaine.

The Supreme Court has instructed that "[w]hen the police have probable cause to arrest one party, and when they reasonably mistake a second party for the first party, then the arrest of the second party is a valid arrest." *Hill v. California*, 401 U.S. 797, 802 (1971) (citation and internal quotation marks omitted). In line with the Supreme Court's precedent, we have stated that the "Fourth Amendment is not violated by an arrest based on probable cause, even if the wrong person is arrested, if the arresting officer had a reasonable, good faith belief that he was arresting the correct person." *Blackwell v. Barton*, 34 F.3d 298, 303 (5th Cir. 1994) (citing *Hill*, 401 U.S. 797). Thus, under this standard, Coleman and Davis did not violate McAllister's Fourth Amendment rights if they reasonably believed that McAllister was "Connie Mac."

McAllister asserts on appeal that the officers did not have an objectively reasonable basis to conclude that she was the drug dealer "Connie Mac." She contends that the overwhelming evidence demonstrated that she was not the real culprit. For instance, she asserts that Davis had gone to the Eudora residence of "Connie Mac" for the drug transactions, Davis had seen the drug dealer, and Davis had been present when Williams picked out the drug dealer from a photo lineup. Therefore, McAllister contends that the officers had

requires issuance of an arrest warrant without further inquiry"). However, because McAllister has argued that her indictment was improperly obtained by the investigating officers without probable cause, we elect to examine whether there was probable cause to arrest McAllister absent the indictment.

knowledge of the appearance and of the correct address of the drug dealer. Given this information, she asserts, they unreasonably believed that McAllister was the drug dealer and unlawfully caused her arrest.

Construing the facts and inferences in favor of McAllister, as we must on summary judgment, we conclude that the district court correctly determined that it was objectively reasonable for Coleman and Davis to believe that McAllister was the drug-dealing "Connie Mac." At the location of the drug transactions, the officers ran the license plate number of the truck at the residence, which came back as belonging to "Connie McAllister." Degan testified that the officers searched for the name "Connie McAllister" in the Eagle System, because "[i]t's not uncommon for people who sell drugs to have had prior arrests." Thus, the officers reasonably believed that the drug dealer's information would appear in the database. Degan stated that, at the time of the investigation, there was only one "Connie McAllister" in the Eagle System—Plaintiff–Appellant McAllister, due to her prior misdemeanor arrests, and not the actual drug dealer, Connie Faye McAllister. Thus, Coleman and Davis reasonably believed that the Connie McAllister in the Eagle System was the drug dealer.[5] Furthermore, McAllister presented no evidence that either Davis or Coleman intentionally or maliciously placed McAllister's information in the case file, knowing that she was not the drug dealer "Connie Mac." Under the circumstances, the officers reasonably, but mistakenly, believed that McAllister was the "Connie Mac" involved in the drug transactions. *See Hill*, 401 U.S. at 804 ("[S]ufficient probability, not certainty, is the touchstone of reasonableness under the Fourth Amendment and on the record before us the officers' mistake was understandable and the arrest a reasonable response to the

---

[5] Whether Coleman or Davis placed the information from the Eagle System into the case file is immaterial to our analysis.

situation facing them at the time."). McAllister has thus not demonstrated a violation of her Fourth Amendment rights.[6]

Because McAllister has not alleged a constitutional violation, Coleman and Davis are entitled to qualified immunity. Given this holding, we need not address the alternate grounds that the district court relied upon in determining that the officers were entitled to qualified immunity—that McAllister failed to establish that the officers' actions were objectively unreasonable in light of clearly established law and that the independent intermediary doctrine did not apply. In conclusion, we affirm the district court's grant of summary judgment in favor of Coleman and Davis on the basis of qualified immunity.

## C. *Sovereign Immunity under the MTCA*

McAllister asserted a gross negligence claim against the County pursuant to the MTCA. The MTCA waives sovereign immunity for claims for money damages arising out of the torts of government entities and the torts of its employees while acting within the course and scope of their employment. *See* Miss. Code Ann. § 11-46-5(1). This waiver of immunity, however, is subject to various exemptions, such as the law enforcement and discretionary function exemptions. *See* Miss. Code Ann. § 11-46-9(1). The district court determined that the County was entitled to sovereign immunity on McAllister's gross

---

[6] Furthermore, we have stated, albeit in unpublished opinions, that police investigatory work that is simply negligent does not rise to the level of a Fourth Amendment constitutional violation. *See Harris v. Payne*, 254 F. App'x 410, 411 (5th Cir. 2007) ("Although it is clear that [plaintiff] should never have been incarcerated, there is no evidence that the actions of the individual defendants amounted to more than negligence. As a result, [plaintiff] cannot establish a constitutional violation [under the Fourth Amendment]. . . ."); *Williams v. City of Amory, Miss.*, 245 F. App'x 334, 335 (5th Cir. 2007) (affirming the dismissal of plaintiff's Fourth Amendment false arrest claim because the defendant police officer's "negligence alone was insufficient to establish a constitutional violation").

negligence claim based on the discretionary function exemption to liability. *See* Miss. Code Ann. § 11-46-9(1)(d).[7]

On appeal, McAllister argues that the district court applied the wrong legal standard. She asserts that the court erred in analyzing whether the discretionary function exemption applied, and should have determined whether the law enforcement exemption applied. *See* Miss. Code Ann. § 11-46-9(1)(c).[8]

McAllister's argument is without merit. The Mississippi courts have held that the exemptions in Section 11-46-9 of the MTCA "are disjunctive in nature," and thus, "where any of the immunities enumerated in [S]ection 11-4[6]-9(1) apply, the government is completely immune from the claims arising from the act or omission complained of." *Knight v. Miss. Transp. Comm'n*, 10 So. 3d 962, 971 (Miss. Ct. App. 2009) (citations and internal quotation marks omitted); *see City of Jackson v. Doe*, 68 So. 3d 1285, 1289 (Miss. 2011) ("Because the City qualifies for immunity under subsection (d), the conditions for immunity under subsection (v) are irrelevant."); *Estate of Carr v. City of Ruleville*, 5 So. 3d 455, 458 (Miss. Ct. App. 2008) (finding that, "[b]ecause the trial court [correctly] determined that the City was entitled to the discretionary function immunity," the court need not address "whether the City was immune under the police protection provision"). Therefore, contrary to McAllister's contention, the district court was not required to determine whether the County was entitled to law enforcement immunity. Because the court determined that the County was

---

[7] This exemption provides that there shall be no liability for any claim "[b]ased upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a governmental entity or employee thereof, whether or not the discretion be abused." Miss. Code Ann. § 11-46-9(1)(d).

[8] This exemption provides that there shall be no liability for any claim "[a]rising out of any act or omission of an employee of a governmental entity engaged in the performance or execution of duties or activities relating to police or fire protection unless the employee acted in reckless disregard of the safety and well-being of any person not engaged in criminal activity at the time of injury." Miss. Code Ann. § 11-46-9(1)(c).

immune under the discretionary function exemption, the court was correct to note that "no further analysis is necessary."

For the reasons stated in the district court's opinion, we conclude that the actions of Coleman and Davis fall within the discretionary function exemption of the Act and, therefore, that the County is entitled to sovereign immunity. Thus, we hold that the district court properly granted summary judgment in favor of the County on McAllister's state-law gross negligence claim.

### III. CONCLUSION

For the foregoing reasons, we AFFIRM the judgment of the district court.