# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 14-60242

CHARLES C. BOSARGE,

United States Court of Appeals
Fifth Circuit

**FILED**

July 15, 2015

Lyle W. Cayce
Clerk

Plaintiff - Appellee

v.

MISSISSIPPI BUREAU OF NARCOTICS; CAL REYNOLDS; ERIC
FULTON,

Defendants - Appellants

Appeal from the United States District Court
for the Southern District of Mississippi

Before BARKSDALE, SOUTHWICK, and HIGGINSON, Circuit Judges.
STEPHEN A. HIGGINSON, Circuit Judge:

Charles C. Bosarge sued the Mississippi Bureau of Narcotics and two
state agents under 42 U.S.C. § 1983 and Mississippi state law. He alleged that
the agents falsely identified him as a participant in a drug ring and caused him
to be unlawfully detained for six months. The district court denied the
Defendants' motion requesting judgment on the pleadings or summary
judgment on the basis of qualified or absolute immunity. On interlocutory
appeal, we hold that the district court erred in denying the Defendants' motion
for judgment on the pleadings under Federal Rule of Civil Procedure 12(c).

No. 14-60242

## FACTS AND PROCEEDINGS

On June 16, 2009, a federal grand jury indicted Charles C. Bosarge (a/k/a "Smooth") and eighteen others. The defendants were charged with conspiracy to possess with intent to distribute methamphetamine in violation of 21 U.S.C. §§ 841(a)(1), 846. Bosarge was subsequently arrested and detained for six months. In December 2009, six weeks before a scheduled trial, the District Court for the Southern District of Mississippi dismissed Bosarge from the indictment without prejudice, pursuant to the government's motion.

In his § 1983 lawsuit, Bosarge claimed that he "was prosecuted, arrested, and detained without probable cause and without due process of law, in violation of the Fourth and Fourteenth Amendments." He alleged that Defendants Eric Fulton and Kyle Reynolds,[1] agents with the Mississippi Bureau of Narcotics, caused these violations by intentionally or recklessly misidentifying him as the person they viewed participating in a drug transaction. In addition, Bosarge sought to hold the agents and the Mississippi Bureau of Narcotics liable for the state law torts of false arrest, false imprisonment, and malicious prosecution, and for violations of unnamed provisions of the Mississippi Constitution.

Bosarge's pleadings alleged the following facts. Fulton and Reynolds, relying in part on wiretapped cell phone conversations, planned to observe a drug deal between a man named Timothy Isom and another suspect in a Best Buy parking lot in Hattiesburg, Mississippi, on November 21, 2008. After witnessing the drug deal, Fulton and Reynolds identified Bosarge as the second suspect, and "[t]his information was either provided directly to federal officials by Defendants Reynolds and Fulton, or was provided to federal officials by other state agents who did so on the basis of claims by Defendants Reynolds

---

[1] The original complaint erroneously spelled Reynolds's first name as "Cal."

2

and Fulton that it was true." However, Bosarge alleged that he was not the person in the Best Buy parking lot. He claimed that the agents "acted intentionally or recklessly in falsely identifying" him, and that they "knew or should have known that their identification of [him] was false." Bosarge alleged that the agents identified him to reinforce a previously-formed conclusion that the man who met with Isom at the Best Buy was named Charles Bosarge. The agents reached that conclusion because the license plate of the second suspect's car was registered to a woman named Mindi Bosarge, and Mindi Bosarge's father or brother, Charles Bosarge, owned the cell phone used to communicate with Isom. Mindi Bosarge's father or brother, Charles Bosarge, is a different person than the Plaintiff. While Bosarge (the Plaintiff) acknowledged that Fulton and Reynolds stated in affidavits that they "did not know the name of the Plaintiff prior to selecting his photograph as the person they saw at the Best Buy parking lot," Bosarge claimed that "those affidavits are not necessarily accurate."

Bosarge alleged that at the time of the meeting with Isom, he was working a 12-hour shift on a shrimp boat. He claimed that the person who participated in the drug deal with Isom was named Randall Eric Tillman. According to Bosarge, the agents "knew before the Best Buy surveillance that the person who was talking with Isom" on the cell phone "went by the nickname 'Smooth,'" which is the "same nickname used by Randall Eric Tillman." Bosarge alleged that Isom later identified the second person in the Best Buy parking lot as someone other than Bosarge. Bosarge alleged that that person, "whether Tillman or someone else," "does not look enough like the Plaintiff so that the Plaintiff could be reasonably mistaken for him."

Bosarge claimed that "[a]s a result of this false identification, federal prosecutors included Plaintiff in their request for an indictment." Bosarge further alleged that Fulton "repeated the false identification" before the grand

jury, and that "no other evidence implicating the Plaintiff was presented to the grand jury." After Bosarge's indictment and subsequent arrest, Reynolds testified as to the identification in an initial detention hearing in Mobile, Alabama, at which "[n]o other evidence was presented linking Plaintiff to this [drug] ring." At a second detention hearing in Hattiesburg, Mississippi, the identification by Fulton and Reynolds was "used as a ground for continuing to detain" Bosarge.

Bosarge stressed that his lawsuit is "based on the false identification" that the Defendants provided to state or federal officials, and "not based on Agent Fulton's testimony to the grand jury, Agent Reynolds'[s] testimony at the detention hearing in Mobile, the use of their prior testimony at the detention hearing in Hattiesburg, or their preparation to testify at any of these hearings." Bosarge further alleged that "the Defendant agents' false testimony at those proceedings taints them so that those events do not break the chain of causation."

Bosarge originally filed his complaint in the Circuit Court of Hinds County, Mississippi, against the Mississippi Bureau of Narcotics, Fulton, Reynolds, and John Does 1-10. The Defendants removed the case to federal court on the basis of federal question jurisdiction and supplemental jurisdiction. *See* 28 U.S.C. §§ 1331, 1367.[2] The Defendants raised a number of affirmative defenses, including absolute and qualified immunity. The district court directed Bosarge to file a reply under Federal Rule of Civil Procedure 7(a)

---

[2] We question, but need not resolve, the Defendants' claim that we also have diversity jurisdiction under 28 U.S.C. § 1332. *See Frazier v. Pioneer Americas LLC*, 455 F.3d 542, 547 (5th Cir. 2006) ("[I]t is long-settled that a state has no citizenship for § 1332(a) diversity purposes."); *Strawbridge v. Curtiss*, 7 U.S. (3 Cranch) 267, 2 L.Ed. 435 (1806) ("[E]ach of the plaintiffs must be capable of suing each of the defendants.").

"alleging with particularity the specific facts which, if true, would overcome the qualified immunity defenses raised by Defendants." The district court also stayed all discovery.

After Bosarge filed his Rule 7(a) reply, the Defendants filed a "motion for judgment on the pleadings or, alternatively, [] summary judgment." The Defendants argued that Bosarge's pleadings are insufficient to state a claim under either federal or state law because he "offers no factual detail concerning how [the agents'] alleged error was the product of malice, intent, or recklessness." The Defendants further argued that even if the pleadings sufficiently alleged constitutional violations, three "breaks in the causal chain" insulated the agents from liability: the grand jury's finding of probable cause, the detention proceeding in Mobile, and the detention proceeding in Hattiesburg. Finally, the Defendants argued that the Mississippi Tort Claims Act immunizes them from suit for violations of state law. In the alternative, the Defendants argued that they are entitled to summary judgment under Federal Rule of Civil Procedure 56 on the basis of affidavits by Fulton and Reynolds, which were attached to the motion. These affidavits described the agents' surveillance at the Best Buy parking lot in November 2008 and their subsequent, independent identifications of Bosarge from a number of photographs of potential suspects. Bosarge later filed an amended complaint, which incorporated facts from the agents' affidavits. The Defendants filed an answer realleging the same immunity defenses as in their first answer, and they filed a second motion for judgment on the pleadings or summary judgment. In the second motion, the Defendants raised the same arguments as they had in the first, and they further argued that the agents were entitled to absolute immunity under a recent Supreme Court case, *Rehberg v. Paulk*, 132 S. Ct. 1497 (2012). The district court held a hearing on the Defendants' motion before issuing an oral ruling denying the motion. The district court found that

No. 14-60242

Bosarge had "pled a claim that entitles him to discovery," and that the Defendants were not entitled to qualified or absolute immunity. The district court did not expressly consider the state law claims, and it did not issue a written opinion. The Defendants timely appealed.

**JURISDICTION**

The denial of qualified or absolute immunity, "to the extent that it turns on an issue of law," is a "final decision" that may be immediately appealed as a collateral order. *Mitchell v. Forsyth*, 472 U.S. 511, 530 (1985); *see also Palmer v. Johnson*, 193 F.3d 346, 350 (5th Cir. 1999). That denial is appealable "whether the ruling occurs at the pleadings stage or at summary judgment." *Johnson v. Johnson*, 385 F.3d 503, 528 (5th Cir. 2004). The Supreme Court has held that appeals courts, in reviewing the denial of a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) on the basis of qualified immunity, have "jurisdiction to pass on the sufficiency of [the] pleadings," which is an "issue of law" that "is both inextricably intertwined with, and directly implicated by, the qualified immunity defense." *Ashcroft v. Iqbal*, 556 U.S. 662, 672–73 (2009) (internal quotation marks and citations omitted). Given that "[t]he standard for dismissal under Rule 12(c) is the same as that for dismissal for failure to state a claim under Rule 12(b)(6)," *Johnson*, 385 F.3d at 529, courts reviewing denials of Rule 12(c) motions on immunity grounds also have jurisdiction, under *Iqbal*, to review the sufficiency of the pleadings.

The Defendants also appeal the denial of their claim that the Mississippi Tort Claims Act ("MTCA") and state common law immunize them from suit for violations of state law. Our court has held that "an order denying qualified immunity under state law is immediately appealable as a 'final decision,' provided that 'the state's doctrine of qualified immunity, like the federal doctrine, provides a true immunity from suit and not a simple defense to liability.'" *Cantu v. Rocha*, 77 F.3d 795, 803 (5th Cir. 1996) (quoting *Sorey v.*

6

*Kellett*, 849 F.2d 960, 962 (5th Cir. 1988)). "[T]he MTCA contemplates immunity from both liability *and judicial proceedings.*" *Hinds Cnty. v. Perkins*, 64 So. 3d 982, 986 (Miss. 2011) (emphasis added); *see also Lampton v. Diaz*, 661 F.3d 897, 899 (5th Cir. 2011) (per curiam) ("The denial of immunity under Mississippi law, like a denial under federal law, is appealable under the collateral order doctrine."). We may therefore review, as a final decision, the district court's denial of immunity to the Defendants with respect to Bosarge's state law claims.

## STANDARD OF REVIEW

The district court's denial of a Rule 12(c) motion for judgment on the pleadings is reviewed de novo. *Johnson*, 385 F.3d at 529. As noted, "[t]he standard for dismissal under Rule 12(c) is the same as that for dismissal for failure to state a claim under Rule 12(b)(6)." *Id.* "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Iqbal*, 556 U.S. at 678 (internal quotation marks and citation omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.' Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Id.* (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 557 (2007)); *see also Backe v. LeBlanc*, 691 F.3d 645, 648 (5th Cir. 2012) ("[A] plaintiff seeking to overcome qualified immunity must plead specific facts that both allow the court to draw the reasonable inference that the defendant is liable for the harm he has alleged and that defeat a qualified immunity defense with equal specificity."). We will "accept all well-pleaded facts as true, viewing them in the

light most favorable to the plaintiff." *Gines v. D.R. Horton, Inc.*, 699 F.3d 812, 816 (5th Cir. 2012) (internal quotation marks, citation, and alteration omitted).

In considering a motion for judgment on the pleadings under Rule 12(c), the court is generally limited to "the contents of the pleadings, including attachments thereto." *Brand Coupon Network, L.L.C. v. Catalina Mktg. Corp.*, 748 F.3d 631, 635 (5th Cir. 2014) (internal quotation marks and citation omitted) (considering a Rule 12(b)(6) motion); Fed. R. Civ. P. 12(d) (applying the same standard to consideration of matters outside the pleadings in both the Rule 12(c) and Rule 12(b)(6) contexts). The "pleadings" include the complaint, answer to the complaint, and "if the court orders one, a reply to an answer." Fed. R. Civ. P. 7(a). However, we agree with Bosarge that we should evaluate his claims with reference to his amended complaint, which supersedes his earlier pleadings. *See King v. Dogan*, 31 F.3d 344, 346 (5th Cir. 1994) ("An amended complaint supersedes the original complaint and renders it of no legal effect unless the amended complaint specifically refers to and adopts or incorporates by reference the earlier pleading.").

We must decide whether, and in what manner, to consider the agents' affidavits, which were attached to the Defendants' original motion and were incorporated by reference into their second motion. The district court never ruled on Bosarge's motion to strike these affidavits,[3] and it is unclear whether the district court considered the affidavits in denying the Defendants' motion for judgment on the pleadings or for summary judgment. We have held that "[d]ocuments that a defendant attaches to a motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to her claim." *Causey v. Sewell Cadillac-Chevrolet, Inc.*, 394 F.3d 285,

---

[3] The district court treated that motion as moot after granting Bosarge's motion for leave to file an amended complaint.

288 (5th Cir. 2004). Given the similarities in the analyses under Rule 12(c) and Rule 12(b)(6), we will apply the same rule to documents attached to the Defendants' motion for judgment on the pleadings. *See Horsley v. Feldt*, 304 F.3d 1125, 1134 (11th Cir. 2002).

Bosarge's amended complaint borrows a number of facts from the agents' affidavits, while disputing other claims made in these affidavits. The Defendants argue that Bosarge, by relying on these affidavits, "has elected to incorporate" them into his amended complaint. Bosarge counters that "[w]hile the amended complaint refers to various portions of the affidavits, it never 'incorporates' them." Because the amended complaint relies substantially on the affidavits, we believe these affidavits should be considered as part of the pleadings, such that the motion need not be treated as one for summary judgment. *See* Fed. R. Civ. P. 12(d) ("If, on a motion under Rule 12(b)(6) or 12(c), matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56.").[4] However, while the affidavits may be considered as an aid to evaluating the pleadings, they should not control to the extent that they conflict with Bosarge's allegations. We distinguish these affidavits from contracts and medical records attached to a complaint, which we have held generally trump contradictory allegations in the complaint. *See, e.g., United States ex rel. Riley v. St. Luke's Episcopal Hosp.*, 355 F.3d 370, 377 (5th Cir. 2004); *Nishimatsu Constr. Co. v. Hous. Nat'l Bank*, 515 F.2d 1200, 1206 (5th Cir. 1975). Accepting

---

[4] Given that the Defendants opposed discovery throughout the proceedings below, and the district court stayed discovery, it would be inequitable for our court to treat the Defendants' motion as one for summary judgment. *See Benchmark Elecs., Inc. v. J.M. Huber Corp.*, 343 F.3d 719, 726 (5th Cir.) (holding that the district court plainly erred in treating the defendant's motion for judgment on the pleadings as a motion for summary judgment without allowing discovery, noting that the plaintiff was "deprived of a full and fair opportunity to defend against summary judgment"), *modified on other grounds on denial of reh'g by* 355 F.3d 356 (5th Cir. 2003).

the Defendant-agents' unilateral statements as true would deprive Bosarge of the presumption of truth to which he is entitled at this stage of the litigation. *See N. Ind. Gun & Outdoor Shows, Inc. v. City of South Bend*, 163 F.3d 449, 455–56 (7th Cir. 1998) (noting that while a "blanket adoption rule makes sense in the context of an attached contract" or other binding agreement, it "would be contrary to the concept of notice pleading" to apply such a rule "in the case of letters written by the opposition for what could be self-serving purposes"); *see also Carrier Corp. v. Outokumpu Oyj*, 673 F.3d 430, 441–42 (6th Cir. 2012) (refusing to accept as true all findings contained in a European Commission decision, attached to a motion to dismiss, but rather allowing the plaintiff to "draw facts from the . . . decision to provide a 'starting point' and then use those facts to construct a theory that differs from or even contradicts that of the [European Commission]"); *Scanlan v. Tex. A&M Univ.*, 343 F.3d 533, 537 (5th Cir. 2003) (suggesting that even where a document attached to a motion to dismiss is incorporated into the pleadings, the district court still must "construe the plaintiffs' factual allegations in the light most favorable to the plaintiffs"). We therefore do not accept as true all allegations in the agents' affidavits, but rather consider these affidavits to better understand Bosarge's amended complaint, while ensuring that Bosarge does not misrepresent the agents' statements.

## I.   Federal Law Claims

To evaluate the Defendants' argument that Bosarge's amended complaint is insufficient, we begin by considering the legal principles that govern this case. *See Iqbal*, 556 U.S. at 675. To overcome the qualified immunity defense, Bosarge must plead that the agents violated a clearly established statutory or constitutional right of which a reasonable person would have known. *See Pearson v. Callahan*, 555 U.S. 223, 231–32 (2009). Bosarge alleged that the agents violated his Fourth and Fourteenth

Amendment rights by causing him to be prosecuted, arrested, and detained without probable cause and without due process of law. First, we find that Bosarge's allegation that he was "prosecuted . . . without probable cause" fails to state a claim because our court has held that "no . . . freestanding constitutional right to be free from malicious prosecution exists." *Castellano v. Fragozo*, 352 F.3d 939, 945 (5th Cir. 2003) (en banc). In addition, although the Fourteenth Amendment is relevant because it applies the Fourth Amendment to the states, Bosarge's claims of unlawful arrest and detention should be analyzed under the Fourth Amendment and not under the Fourteenth Amendment's Due Process Clause. *See Cuadra v. Hous. Indep. Sch. Dist.*, 626 F.3d 808, 814 (5th Cir. 2010) ("Cuadra's Fourteenth Amendment claims are based on alleged pretrial deprivations of his constitutional rights and, under the holding in *Albright*, such claims should be brought under the Fourth Amendment.") (citing *Albright v. Oliver*, 510 U.S. 266, 274 (1994) (plurality opinion)); *Blackwell v. Barton*, 34 F.3d 298, 302 (5th Cir. 1994) (holding that while the plaintiff alleged that her arrest and detention violated both the Fourth and Fourteenth Amendments, her claim was "properly considered under the Fourth Amendment, the more specific constitutional right implicated by her allegations"); *see also Castellano*, 352 F.3d at 953 ("The initiation of criminal charges without probable cause may set in force events that run afoul of explicit constitutional protection—the Fourth Amendment if the accused is seized and arrested, for example . . . .").

Clearly established Fourth Amendment law at the time of the agents' conduct provided that an arrest must be based on probable cause. *See, e.g.*, *Club Retro, L.L.C. v. Hilton*, 568 F.3d 181, 206 (5th Cir. 2009). Probable cause exists when "the facts and circumstances within the officer's knowledge . . . are sufficient to warrant a prudent person, or one of reasonable caution, in believing, in the circumstances shown, that the suspect has committed, is

committing, or is about to commit an offense." *Id.* at 204 (internal quotation marks and citations omitted). Although generally "a grand jury indictment . . . itself establishes probable cause," *Campbell v. City of San Antonio*, 43 F.3d 973, 976 (5th Cir. 1995), we here examine the alleged pre-indictment events because Bosarge claims that the grand jury proceedings were tainted by Fulton's misrepresentations. *See McAllister v. Desoto Cnty., Miss.*, 470 F. App'x 313, 319 n.4 (5th Cir. 2012) (per curiam).[5] Important here is the well-established rule that reasonable mistakes by police officers, even leading to the arrest of the wrong person, do not implicate the Fourth Amendment. *See Heien v. North Carolina*, 135 S. Ct. 530, 536, 539 (2014) (noting that the Fourth Amendment tolerates objectively reasonable mistakes); *Blackwell*, 34 F.3d at 304 (holding that an officer could not be held liable under § 1983 for a Fourth Amendment violation for arresting the wrong person, pursuant to a valid warrant, where "no inference can be drawn that [the officer] knew or believed he was or likely was arresting someone other than" the person named in the warrant); *see also McAllister*, 470 F. App'x at 319–20 (holding that officers who erroneously added the plaintiff's information to a suspect's case file did not violate the Fourth Amendment, noting that the officers' conduct was "objectively reasonable," and that there was no evidence that they acted "intentionally or maliciously").

With these principles in mind, we now consider the sufficiency of Bosarge's amended complaint. We first identify the allegations that are not entitled to the assumption of truth. *See Iqbal*, 556 U.S. at 680. We will not assume the truth of Bosarge's claim that the officers "acted intentionally or

---

[5] Because we ultimately find that Bosarge has not adequately alleged that a Fourth Amendment violation occurred, we need not consider the Defendants' argument that the grand jury and detention proceedings break the causal chain between the agents' conduct and any subsequent violation. *See Cuadra*, 626 F.3d at 813.

recklessly in falsely identifying" him as the person whom they witnessed meeting with Isom in the Best Buy parking lot. The Supreme Court and our court have found similar claims to be too conclusory to survive a motion to dismiss without further allegations. *See id.* at 680–81 (declining to assume the truth of the conclusory allegation that petitioners "'knew of, condoned, and willfully and maliciously agreed to subject [respondent]' to harsh conditions of confinement 'as a matter of policy, solely on account of [his] religion, race, and/or national origin and for no legitimate penological interest'" (second alteration in original) (citation omitted)); *Morin v. Caire*, 77 F.3d 116, 121 (5th Cir. 1996) (dismissal proper where the complaint alleged that an officer "'knew, or should have known, that the statements of [a witness] were false,' without pleading factual allegations indicating that [the] statement[s] are indeed false, or facts indicating that no reasonable police officer would have believed [the] statement[s]"). We also will not assume the truth of Bosarge's bare assertion that the officers identified his photograph simply to reinforce their previously-formed conclusion that the suspect was named Charles Bosarge. *See Peñalbert-Rosa v. Fortuño-Burset*, 631 F.3d 592, 595 (1st Cir. 2011) ("[S]ome allegations, while not stating ultimate legal conclusions, are nevertheless so threadbare or speculative that they fail to cross 'the line between the conclusory and the factual.'" (quoting *Twombly*, 550 U.S. at 557 n.5)).

We next consider Bosarge's well-pleaded factual allegations to determine if they plausibly support his claim of an intentional or reckless misidentification. *See Iqbal*, 556 U.S. at 681. Bosarge raises a plausible inference that the identification was erroneous: he alleged that he was not the suspect in the Best Buy parking lot, that Isom identified another person as that suspect, and that the charges against him were dismissed. However, not all mistakes are reckless or intentional. The agents' knowledge that individuals named Mindi and Charles Bosarge were connected to the drug deal

does not alone suggest that the agents identified Bosarge simply to reinforce a previously-formed conclusion. In addition, Bosarge did not expressly allege that the Defendants knew, before the photographic identification, that the person in the photograph was named Charles Bosarge.

Bosarge's counsel acknowledged at oral argument that his pleadings hinge on the allegation that the man identified by Isom, "whether Tillman or someone else," "does not look enough like the Plaintiff so that the Plaintiff could be reasonably mistaken for him." While we accept as true Bosarge's claim of a difference in appearance, Bosarge's characterization of the identification as unreasonable is a conclusion not entitled to the presumption of truth. *See id.* at 680. In addition, without further allegations regarding the dissimilarities between Bosarge and the man Isom identified, Bosarge has not plausibly established that the identification was unreasonable, let alone reckless or knowingly false. Because a reasonable mistake does not implicate the Fourth Amendment, Bosarge fails to state a claim. The agents are entitled to qualified immunity, and we need not decide their claim of absolute immunity under *Rehberg*.

At oral argument, Bosarge's counsel requested limited discovery on the ground that he strongly suspected that exculpatory evidence exists. But suspicion alone is not enough: federal pleading rules "do[] not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." *Id.* at 678–79. Indeed, "[o]ne of the most salient benefits of qualified immunity is protection from pretrial discovery, which is costly, time-consuming, and intrusive." *Backe*, 691 F.3d at 648.

In the analogous Rule 12(b)(6) context, our court has ordered the district court to dismiss insufficient pleadings where the plaintiff has had an opportunity to plead his best case. *See Geter v. Fortenberry*, 849 F.2d 1550, 1559 (5th Cir. 1988) ("[W]e would normally order the district court to grant

[the] motion to dismiss or for summary judgment, if we were to conclude that [the plaintiff] has had the opportunity to plead his best case."). Bosarge has had three opportunities to provide sufficient factual detail: his initial complaint, his Rule 7 reply, and his amended complaint. Indeed, Bosarge's counsel stated to the district court: "Everything we have and we can marshal at this stage of the proceedings . . . is contained in our amended complaint." Bosarge has had an opportunity to plead his best case, and his claims under federal law should be dismissed.

## II.    State Law Claims

The Mississippi Tort Claims Act "provides the exclusive civil remedy against a governmental entity and its employees for acts or omissions which give rise to a suit." *City of Jackson v. Sutton*, 797 So. 2d 977, 980 (Miss. 2001) (citation omitted). The Mississippi Bureau of Narcotics has been found to be a state entity within the language of the MTCA. *Lippincott v. Miss. Bureau of Narcotics*, 856 So. 2d 465, 469 (Miss. Ct. App. 2003). The MTCA provides the following general waiver of sovereign immunity: "[T]he immunity of the state and its political subdivisions from claims for money damages arising out of the torts of such governmental entities and the torts of their employees while acting within the course and scope of their employment is hereby waived . . . ." Miss. Code Ann. § 11-46-5(1). However, that waiver is subject to various exceptions. The discretionary function exception, which the Defendants argue applies here, provides:

> A governmental entity and its employees acting within the course and scope of their employment or duties shall not be liable for any claim . . . [b]ased upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a governmental entity or employee thereof, whether or not the discretion be abused . . . .

*Id.* § 11-46-9(1)(d). Immunity attaches to discretionary functions (requiring judgment or discretion) but not to ministerial functions (imposed by statute, regulation, or other binding directive). *See Brantley v. City of Horn Lake*, 152 So. 3d 1106, 1113–1115 (Miss. 2014) (en banc); *Harris ex rel. Harris v. McCray*, 867 So. 2d 188, 191 (Miss. 2003) (en banc). In general, "acts performed in furtherance of a discretionary function or duty are themselves entitled to immunity." *Brantley*, 152 So. 3d at 1113. However, "narrower duties encompassed in a broad discretionary function may be rendered ministerial through statute or regulation." *Id.* "[T]he plaintiff bears the burden of proving that the narrower function or duty at issue has lost its discretionary-function immunity." *Id.* at 1115.

In the absence of guidance from the Mississippi Supreme Court, we make an *Erie* guess as to whether the discretionary function exception applies here. *See Keen v. Miller Envtl. Grp., Inc.*, 702 F.3d 239, 243 (5th Cir. 2012). Our own unpublished caselaw and Mississippi intermediate state court precedent indicate that the function of investigating criminal activity is discretionary. *See McAllister*, 470 F. App'x at 322–23 (affirming the application of discretionary function immunity to a claim that an officer failed to investigate the case properly); *Estate of Carr ex rel. Macfield v. City of Ruleville*, 5 So. 3d 455, 458 (Miss. Ct. App. 2008) (upholding the application of discretionary function immunity to "basic investigative decisions" by a police chief, including "the decision of what type of investigation to conduct prior to the execution of the warrant"). Although a statute or regulation may render ministerial a particular duty within a broad discretionary function, Bosarge has not carried his burden of identifying any such statute or regulation, even though he had an opportunity to do so in his amended complaint, filed after the Defendants claimed the discretionary function exception. Bosarge argues on appeal that discretionary function immunity does not apply because "a law enforcement

officer does not have the discretion to falsely or recklessly accuse someone of a crime he didn't commit." However, as explained above, Bosarge's amended complaint does not adequately allege that the misidentification was reckless or knowing. *See City of Clinton, Ark. v. Pilgrim's Pride Corp.*, 632 F.3d 148, 155 (5th Cir. 2010) (noting that federal pleading rules apply in diversity cases). We therefore find that discretionary function immunity protects both the Mississippi Bureau of Narcotics and the individual agents from suit for the alleged violations of state law.

## CONCLUSION

Bosarge has not stated a claim that the Defendants violated his federal constitutional rights, and the Mississippi Tort Claims Act immunizes the Defendants from suit under state law. Because we hold that the district court erred in denying the Defendants' motion for judgment on the pleadings, we do not consider the Defendants' argument that the district court should have granted their motion for summary judgment. We REVERSE the district court's denial of the Defendants' Rule 12(c) motion for judgment on the pleadings. We REMAND with instructions to dismiss Bosarge's claims.