# United States Court of Appeals for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**
September 10, 2020

Lyle W. Cayce
Clerk

No. 19-50793

Carlos Henry Nerio II,

*Plaintiff—Appellant*,

*versus*

Derek Evans, Peace Officer at the Texas Department of Public Safety, in his individual capacity; Amy King, CID Special Agent by the Texas Department of Public Safety, in her individual capacity,

*Defendants—Appellees*.

Appeal from the United States District Court
for the Western District of Texas
USDC No. 1:17-CV-37

Before King, Graves, and Oldham, *Circuit Judges*.
Andrew S. Oldham, *Circuit Judge*:

This is a case of mistaken identity. Carlos Nerio argues that narcotics officers violated the Constitution when they mistakenly arrested him instead of his half-brother—also named Carlos Nerio. The district court granted qualified immunity to the officers. We affirm.

No. 19-50793

I.

Narcotics officers from the Texas Department of Public Safety ("DPS") used court-authorized pen registers and wiretaps to collect evidence of a meth deal in Austin. The meth purchaser's phone number was registered to Carlos Nerio. A DPS surveillance unit also witnessed a meth purchase. The purchaser was driving a silver Chevrolet pickup truck with a license plate that also was registered to Carlos Nerio.

DPS officers attempted to use Nerio's phone and truck to find his address. Officers traced Nerio's phone number to 7112 Ed Bluestein Boulevard. That's a Cricket Wireless store—not Nerio's residence. Officers traced the Chevy truck to a house on Tapo Lane in Austin. They also confirmed that Carlos Nerio lived at the Tapo Lane address.

The problem is that the Carlos Nerio who purchased the Cricket phone and lived on Tapo Lane is not *the Appellant* Carlos Nerio. The two Nerios are half-brothers; they share a father and (obviously) names. The record abounds with mistakes over which Nerio is which. The Appellant went by at least three different variations of "Carlos Nerio." And the cognomen confusion was so severe that Appellant Nerio's own lawyer misidentified him in an affidavit. For our part, we refer to the two Nerios as "Appellant Nerio" and "Tapo Lane Nerio."[1]

One of the officers supervising the meth investigation, Lieutenant Leggett, asked for driver's license information for the Carlos Nerio who

---

[1] The record identifies Tapo Lane Nerio as "Carlos Henry Nerio, Jr.," whereas Appellant Nerio gives his name as "Carlos Henry Nerio II" in his initial complaint and in his filings in this court. During one of his depositions, however, Appellant Nerio said he sometimes goes by Carlos Henry Nerio, Jr. Finally, Appellant Nerio signed an affidavit in 2019 giving his name as "Carlos Henry Nerio, III." During oral argument, Appellant Nerio's counsel confirmed that he misidentified his client in the affidavit.

drove the silver Chevy truck to the meth deal—that is, the *Tapo Lane* Nerio. Then, for reasons unrevealed in the record, some unidentified DPS official found and produced license information for *Appellant* Nerio. Leggett sent Appellant Nerio's license information to Officer King. King showed Appellant Nerio's license photo to the DPS surveillance unit. And the surveillance officers confirmed that Appellant Nerio was present at the drug deal. But at least one member of the surveillance unit, Officer Evans, eventually learned that the driver's license database contained information for two different individuals named Carlos Nerio.

King met with an assistant DA, and they decided to seek an arrest warrant for Appellant Nerio. King then tasked Evans with drafting an affidavit and applying for the warrant. Evans dutifully did so. His affidavit described the extensive investigation that led to Appellant Nerio's identification, though it did not mention that two Nerios appeared in the driver's license database. A magistrate authorized the warrant.

DPS officers then executed the warrant and arrested Appellant Nerio. He was charged with conspiracy to commit felony manufacturing/delivery of a controlled substance. Local news covered the arrest. As a result, Appellant Nerio lost his job. Eventually, however, he convinced the local DA to drop the charges against him.

Appellant Nerio then sued Evans and King under 42 U.S.C. § 1983. He framed his complaint in terms of false arrest and false imprisonment and claimed that the pair of officers violated his rights under the Fourth and Fourteenth Amendments. The officers moved to dismiss the suit. The district court dismissed the Fourteenth Amendment claims but denied the rest of the officers' motion to dismiss.

Next, the officers moved for summary judgment. The district court referred the matter to a magistrate. The magistrate determined that a lack of

"clearly established law" on mistaken-identity arrests meant Evans and King weren't on notice that their conduct might be unconstitutional. The district court agreed and entered summary judgment in favor of Evans and King on the basis of qualified immunity. Nerio appealed and limited his challenge to the judgment concerning Evans.

Our review is *de novo*. *See Morrow v. Meachum*, 917 F.3d 870, 874 (5th Cir. 2019).

## II.

Evans is entitled to qualified immunity unless Appellant Nerio can show two things: first, that Evans violated a statutory or constitutional right, and second, that "the right at issue was clearly established at the time of defendant's alleged misconduct." *Pearson v. Callahan*, 555 U.S. 223, 232 (2009) (quotation omitted). The Supreme Court does not mandate an order of operations, so we can affirm a qualified-immunity award by answering either question or both. *See id.* at 236. The district court focused on the second question. We do the same and affirm.

## A.

The Fourth Amendment protects the "right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. CONST. amend. IV. "Because arrests are 'seizures' of 'persons,' they must be reasonable under the circumstances." *District of Columbia v. Wesby*, 138 S. Ct. 577, 585 (2018). Yet "[q]ualified immunity shields an officer from suit" unless that "officer had fair notice that her conduct was unlawful." *Brosseau v. Haugen*, 543 U.S. 194, 198 (2004) (per curiam); *see also Hope v. Pelzer*, 536 U.S. 730, 739 (2002) ("[Q]ualified immunity operates to ensure that before they are subjected to suit, officers are on notice their conduct is unlawful." (quotation omitted)). Fair notice requires clearly established law. That is, the law must "clearly prohibit the

officer's conduct in the particular circumstances before him" so "every reasonable official" knows not to engage in that conduct. *Wesby*, 138 S. Ct. at 590; *see also Ashcroft v. al-Kidd*, 563 U.S. 731, 742 (2011).

"Abstract or general statements of legal principle untethered to analogous or near-analogous facts are not sufficient to establish a right 'clearly' in a given context; rather, the inquiry must focus on whether a right is clearly established as to the specific facts of the case." *Vincent v. City of Sulphur*, 805 F.3d 543, 547 (5th Cir. 2015). To show the law is clearly established, a party must "identify a case where an officer acting under similar circumstances . . . was *held to have violated* the Fourth Amendment." *Wesby*, 138 S. Ct. at 590 (emphasis added) (quotation omitted).

We cannot find a case that would've given Evans "fair notice" that his conduct might be unconstitutional. *Brosseau*, 543 U.S. at 198. Therefore, Appellant Nerio has not shown that the violative nature of Evans's particular conduct was clearly established at the time of the arrest.

Start with *Baker v. McCollan*, 443 U.S. 137 (1979). That case also involved two brothers with similar names—Leonard McCollan and Linnie McCollan. *Id.* at 140. Somehow, Leonard managed to acquire an exact copy of Linnie's driver's license—save that "'Leonard's picture graced it instead of Linnie's.'" *Ibid.* (quoting *McCollan v. Tate*, 575 F.2d 509, 511 (5th Cir. 1978)). By getting arrested for drug charges and pretending to be his brother all the way through the moment he was bailed out of jail, Leonard sullied his brother's good name. *Id.* at 140–41. After Linnie ran a red light, officers ran a warrant check and thought they found a wanted man. *Id.* at 141. They took Linnie into custody, and officials cross-referenced his identification with records from his brother's arrest on narcotics charges. *Ibid.* Thanks to Leonard's fake ID, the records lined up. And poor Linnie sat in jail for several days. *Id.* at 140–41. Only after officers examined a picture of the wanted man

No. 19-50793

(*i.e.*, Leonard) did they realize they'd made a mistake. That's when they released Linnie. *Id.* at 141.

Linnie sued the county sheriff "for the intentional failure to investigate and determine that the wrong man was imprisoned." *Id.* at 143. The Supreme Court held he had no cognizable claim under 42 U.S.C. § 1983. *Id.* at 146–47. That wasn't to say that the Court blessed the sheriff's conduct. It simply meant that "[w]hatever claims [Linnie's] situation might give rise to under state tort law, . . . it gives rise to no claim under the United States Constitution." *Id.* at 144. In so holding, the Court noted that the "Constitution does not guarantee that only the guilty will be arrested" nor does it require officials "to perform an error-free investigation" of mistaken-identity claims. *Id.* at 145–46.

*Baker* does not help Appellant Nerio for two reasons. First, it held there was no Fourth Amendment violation. *Id.* at 146. And to clearly establish the violative nature of an officer's conduct, a prior decision must at least hold there was some violation of the Fourth Amendment. *See Wesby*, 138 S. Ct. at 590. Second, the theory of liability in *Baker* was that the defendant sheriff *himself* had erred by failing to institute measures that would have uncovered the misidentification. *See Baker*, 443 U.S. at 141–43. Here, however, Evans wasn't the one who searched the driver's license database, and hence Evans wasn't the one who misidentified Appellant Nerio. Nothing in *Baker* would have led a reasonable officer in Evans's position to think the Constitution required him to second-guess other officers.

Nor does *Hill v. California*, 401 U.S. 797 (1971), help Appellant Nerio. There, police arrested a man named Miller thinking he was actually a man named Hill. *Id.* at 799. Miller told police he wasn't Hill and produced ID to corroborate that assertion. *Ibid.* Even so, Miller matched the description of Hill and was inside Hill's apartment when police arrived; those two facts

convinced the Court that "the officers' mistake was understandable and the arrest a reasonable response" to the situation. *Id.* at 803–04. The Court therefore held that the officers had not committed a constitutional violation. *Id.* at 801. As in *Baker*, the absence of a holding that some officer violated an arrestee's constitutional right means that *Hill* falls short of giving Evans notice that arresting Nerio might be unconstitutional. *See Wesby*, 138 S. Ct. at 590. So *Hill* does not clearly establish the law.

Circuit precedent doesn't help Appellant Nerio either.[2] In *Bosarge v. Mississippi Bureau of Narcotics*, two officers surveilled a drug deal in a Best Buy parking lot. 796 F.3d 435, 437 (5th Cir. 2015). Officers traced the suspect's vehicle to a Mindi Bosarge and the suspect's cell phone to a Charles Bosarge. *Ibid.* The officers then arrested the plaintiff—a different Charles Bosarge—and he was detained for six months. *Id.* at 436, 443. The plaintiff said the officers had gotten it all wrong—that when the officers were surveilling the Best Buy drug deal, he was working a 12-hour shift on a shrimp boat. *Id.* at 437. And he said that the officers' mistaken identification must have been unconstitutional because he did not look like the man the officers had actually seen. *Id.* at 436–37.

We carefully considered the plaintiff's claims and found them wanting. We noted that "reasonable mistakes by police officers, even leading to the arrest of the wrong person, do not implicate the Fourth Amendment." *Id.* at 442. And the officers' identification of the plaintiff was just that sort of mistake. We therefore concluded that the officers hadn't violated his Fourth

---

[2] Although we know the Supreme Court's decisions can clearly establish the law, the Supreme Court has never held that our decisions can do the same. *See Wesby*, 138 S. Ct. at 591 n.8 ("We have not yet decided what precedents—other than our own—qualify as controlling authority for purposes of qualified immunity.").

Amendment rights at all, much less any rights that were clearly established. *Id.* at 443.

*Bosarge* does not clearly establish the unlawfulness of Evans's conduct in this case. For one thing, its holding that there was no Fourth Amendment violation renders it incapable of clearly establishing the law. *See Wesby*, 138 S. Ct. at 590. For another, the factual similarity between *Bosarge* and the case at hand makes it difficult to see how every reasonable official in Evans's position would have understood that what he did violated a constitutional right. *See Al-Kidd*, 563 U.S. at 741. The officers in both cases relied on a wiretap to identify a potential drug deal, then surveilled that exchange, traced phones and license plates back to a particular name, and eventually arrested a man by that name. In this case and *Bosarge*, the arrestee argued that he looked little like the real criminal surveilled by officers. And *Bosarge* held there was no Fourth Amendment violation at all. That holding might have led a reasonable officer in Evans's position to think his conduct was constitutional; it certainly wouldn't have mandated the contrary conclusion.

B.

Appellant Nerio's principal counterargument is that this is not a mistaken-identity case at all. Rather, he says, Evans violated the law clearly established in *Franks v. Delaware*, 438 U.S. 154 (1978). That case held that an officer violates the Fourth Amendment by intentionally or recklessly including a false statement in a warrant application. Appellant Nerio never made this argument in his objections to the magistrate's report and recommendation—there he never cited, much less discussed, *Franks*. So he arguably forfeited it. *See Masel v. Villarreal*, 924 F.3d 734, 749 (5th Cir. 2019).

Forfeited or not, the argument isn't a winning one. Liability under *Franks* requires a certain mindset and certain conduct: an officer must intentionally, "or with a reckless disregard for the truth," include "a false

statement in a warrant application" or omit a material fact from it. *Kohler v. Englade*, 470 F.3d 1104, 1113 (5th Cir. 2006). Among other things, Appellant Nerio claims that Evans recklessly disregarded the truth in his warrant application. Specifically, he alleges that Evans (1) falsely indicated that a Facebook search linked Appellant Nerio to the cell phone used at the meth deal; (2) listed the Cricket Wireless address as Appellant Nerio's residence; and (3) omitted a description of the physical dissimilarities between Appellant Nerio's driver's license photo and the Tapo Lane Nerio. Based on the record before us, Evans's conduct does not satisfy the *Franks-Kohler* standard.

Although Evans was wrong about (1) and (2), Appellant Nerio has not shown that Evans made these statements recklessly. Evans only included the Facebook search in his affidavit after King informed him it had taken place, and King honestly believed another agent had run the search. Perhaps Evans could have done more to corroborate King's assertion, but Evans did not recklessly disregard the truth by trusting his colleague. The same can be said of including the Cricket Wireless address in the affidavit.

Nor did Evans recklessly omit (3). It's true that the man Evans observed at the meth deal and the man King showed him in the driver's license photo were not the same Nerio. It's also true that by the time Evans wrote the warrant affidavit, he knew the license database contained two different Nerios. But what Evans did *not* know was that he and his colleagues had identified the wrong man. In fact, Evans and the other officers on the surveillance team looked at Appellant Nerio's license photo and "were sure that was the person" they'd seen during their surveillance work. And in his deposition for this case, Evans stood fast on that point. Evans was mistaken.

No. 19-50793

But everything in the record suggests that was "an honest mistake." *Blackwell v. Barton*, 34 F.3d 298, 303 (5th Cir. 1994).

AFFIRMED.